STATE OF NORTH CAROLINA v. WILLIE FORREST, III

No. COA03-1438

(Filed 1 March 2005)

**1. Appeal and Error— appellate rules violation—raising more than one issue in assignment of error—discretionary review**

Although defendant's first assignment of error violates the mandate of Rule 10(c)(1) of the North Carolina Rules of Procedure since it raises two issues of law including whether the trial court erred by requiring defendant to be physically restrained while in court and whether it erred by denying defendant's oral motion to waive his right to be present at the trial, the Court of Appeals exercised its discretion under Rule 2 of the North Carolina Rules of Appellate Procedure to review both issues raised.

## 2. Criminal Law— physical restraint of defendant—abuse of discretion standard

The trial court did not abuse its discretion in an attempted first-degree murder, habitual misdemeanor assault inflicting serious injury, and habitual misdemeanor assault on a law enforcement officer case by requiring defendant to be physically restrained while in the courtroom including being secured to his chair, being handcuffed, and being masked during his trial, because: (1) the trial court's determination that it was both necessary and appropriate for the security of court personnel to restrain defendant in this manner at trial was supported by ample evidence when defendant was on trial for attempted first-degree murder and two counts of habitual misdemeanor assault arising out of a brutal attack on his former attorney and his subsequent biting of a sheriff's deputy which occurred in the courtroom during a previous trial and after which it took five men to subdue defendant; (2) at the hearing on defendant's objection to being restrained, the State forecast evidence of defendant's guilty plea from a 1996 Nash County jail incident where he attacked another of his former attorneys while incarcerated; (3) defendant spat on a Wake County sheriff's deputy shortly before being brought into court for pretrial proceedings and interrupted the proceedings at various times with profane outbursts; (4) during pretrial proceedings, defendant was eventually removed from the courtroom to a nearby room where he continued to speak very loudly and abusively to the security officers in their presence and in the hearing of the court; (5) defendant relayed to his counsel threats to disrupt the trial if he was required to appear in court while physically restrained; and (6) the trial court complied with the procedural requirements of N.C.G.S. § 15A-1031 by giving defendant an opportunity to object to being restrained, by conducting a hearing following defendant's objection, by making appropriate findings of fact following the hearing, by entering in the record its reasons for ordering defendant restrained in this manner, and by instructing the jury to disregard defendant's restraints.

## 3. Constitutional Law— right to be present at trial—denial of waiver of right

The trial court did not abuse its discretion in an attempted first-degree murder, habitual misdemeanor assault inflicting serious injury, and habitual misdemeanor assault on a law enforcement officer case arising out of defendant's assault of his attorney

while in court for an unrelated criminal matter by denying defendant's oral motion that he be allowed to waive his right to be present at trial because, although defendant correctly notes that in a noncapital trial defendant's right to be present is personal and may be waived, defendant neither submitted a written waiver of his appearance nor any other writing in support of his oral motion to waive his right to be present at trial as required by N.C.G.S. § 15A-1011(d).

**4. Assault— habitual misdemeanor assault—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the two habitual misdemeanor assault charges even though defendant contends that four of the five prior misdemeanor convictions arose from a single incident, because: (1) N.C.G.S. § 14-33.2 contains no language which could be reasonably construed as requiring that any of the prior misdemeanor convictions either occur on separate dates or arise from separate incidents; (2) contrary to defendant's assertion, from the very fact that the legislature chose to specify that the three felony convictions underlying a habitual felon charge must arise from separate occurrences, it can be inferred that the legislature would have included a similar specification in N.C.G.S. § 14-33.2 if it had intended to impose a separate occurrences limitation on the offense of habitual misdemeanor assault; and (3) the Court of Appeals has already concluded that N.C.G.S. § 14-33.2 violates neither the ex post facto nor double jeopardy provisions of our federal and state constitutions.

**5. Homicide— attempted first-degree murder—motion to dismiss—sufficiency of evidence—premeditation and deliberation**

The trial court did not err by denying defendant's motion to dismiss the charge of attempted first-degree murder based on alleged insufficient evidence of premeditation and deliberation, because: (1) the victim, an attorney who was representing defendant in the sentencing phase of his trial on multiple felony counts when the assault took place, did nothing to provoke defendant prior to the assault; (2) the victim was listening to the district attorney and the trial judge and was neither looking at nor speaking to defendant when defendant struck him; (3) there was evidence that defendant became agitated during his counsel's closing argument earlier in the day, and that defendant again

**STATE v. FORREST**

[168 N.C. App. 614 (2005)]

became agitated as the verdict was being read; (4) during and immediately after the assault, defendant utilized violent and profane language to repeatedly indicate that he intended to kill the victim; and (5) defendant struck the victim with sufficient force to fracture the victim's skull, continued to punch and kick the victim after the initial blow rendered the victim unconscious, bit one of the sheriff's deputies who was attempting to subdue him, and attempted to bite the victim as he lay prone on the court-room floor.

Appeal by defendant from judgment entered 16 July 2003 by Judge Steve A. Balog in Wake County Superior Court. Heard in the Court of Appeals 16 June 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Brent D. Kiziah, for the State.*

*Terry W. Alford for defendant-appellant.*

ELMORE, Judge.

Willie Forrest, III (defendant) appeals from judgment entered upon jury verdicts finding him guilty of attempted first degree murder, habitual misdemeanor assault inflicting serious injury, and habitual misdemeanor assault on a law enforcement officer. For the reasons stated herein, we conclude defendant received a fair trial, free of prejudicial error.

The events giving rise to the charges against defendant occurred in courtroom 3-C of the Wake County Courthouse on 22 January 2003, during the sentencing phase of defendant's trial in a criminal matter unrelated to the convictions which are the subject of the present appeal. The State's evidence tended to show the following: George Hughes, defendant's attorney in the earlier matter, was giving his closing argument when defendant became agitated and attempted to leave the courtroom. Defendant was restrained by sheriff's deputies and Hughes completed his closing argument, during which Hughes twice read to the jury a statement defendant had written and instructed Hughes to read. The jury then deliberated for between one and a half and two and a half hours and returned with a verdict. As the verdict was being read, defendant, seated next to Hughes at the defense table, again became increasingly agitated. Shortly thereafter, as Assistant District Attorney Ned Mangum was addressing the court during the trial's sentencing phase, four witnesses testified that

defendant's expression changed and he rolled or shook his head in disgust; one witness testified that defendant balled his hand into a fist as Mangum spoke. Defendant then abruptly stood and struck the unsuspecting Hughes on the side of the head with his fist, with such force that Hughes was immediately knocked unconscious and fell to the floor. Defendant continued to punch and kick Hughes, landing at least one more forceful blow before being tackled by Mangum and four Wake County Sheriff's deputies, one of whom, Lieutenant David Woodruff, was bitten on the arm by defendant during the scuffle. After he was subdued, defendant also attempted to bite Hughes as the two men lay on the courtroom floor.

The audio recording device used by the court reporter captured several statements defendant made during and immediately after the incident, including the following:

> I would try to kill . . . I hope he's dead! I tried to kill him, he tried . . . he just took my life. . . . I hope you die m------ f------! I told you you was f------ with the wrong one! . . . Oh jack ass leg [sic] lawyer. . . . [T]hey found me guilty . . . I hope you die George! You took my life, I'm gonna to take yours. . . . I hope the bastard die. You done f--- the last n----- you gonna f--- in your lifetime. . . .

Hughes remained unconscious until an ambulance crew arrived and revived him with smelling salts. He was taken to Wake Medical Center, where he was diagnosed with a fractured skull and where he remained in the intensive care unit overnight for observation. At the hospital he was treated by Robert Lee Allen, M.D., a neurosurgeon. At trial, Dr. Allen testified that Hughes' injury was serious and that a blow to the head from a fist such as defendant inflicted upon Hughes could result in death. Hughes was released from the hospital the next day and suffered from headaches for approximately six weeks after the incident. Hughes testified that he is now completely recovered from his injuries.

On 28 January 2003, the Wake County Grand Jury returned four indictments charging defendant with the following offenses arising from his actions on 22 January 2003: (1) attempted first degree murder, (2) habitual misdemeanor assault inflicting serious injury, (3) habitual misdemeanor assault on a law enforcement officer, and (4) being a habitual felon. These offenses were joined and called for trial at the 15 July 2003 criminal session of Wake County Superior Court. During all phases of the trial, defendant was secured to his chair at the defense table by straps across his shoulders, waist, feet,

and legs. Defendant's hands were also cuffed, and he wore a white mask covering his mouth and nose. The trial court noted defendant's pretrial objection to appearing in court restrained in this manner and, after a hearing, ruled that defendant would have to be restrained while in court, specifically concluding that defendant's restraints were "both necessary and appropriate for the security of court personnel[.]" Defendant then made an oral motion to voluntarily waive his right to be present during the trial, which the trial court, again after a hearing, denied.

The trial court, pursuant to N.C. Gen. Stat. § 1A-1, Rule 404(b), admitted testimony from Nash County Jail Administrator Claudis Langston regarding a 1996 incident which occurred while defendant was incarcerated at the Nash County jail. Langston testified that on 13 December 1996, defendant met with his then-attorney, John Fenner, in a conference room at the jail. Upon the meeting's conclusion, defendant was being escorted by an officer back to his cell when defendant "turned around, bolted back towards Mr. Fenner, striking Mr. Fenner in the head and knocking his glasses off and knocking Mr. Fenner to the floor" before being subdued by Langston and another officer. Fenner suffered a wound over his eye and was taken to Nash General Hospital for treatment.

The record indicates that on 30 April 1997, defendant pled no contest to four misdemeanor offenses arising from the 1996 incident at the Nash County Jail: assault inflicting serious injury, assault on a government official, and two counts of injury to personal property. The record further indicates that on 12 March 2001, defendant pled guilty in Wake County to a fifth misdemeanor offense, communicating threats, arising from an incident which occurred on 11 August 2000.

Defendant's motion to dismiss all charges, made at the close of the State's evidence, was denied. Defendant presented no evidence. The jury returned verdicts of guilty on the attempted first degree murder charge, the habitual misdemeanor assault inflicting serious injury charge, and the habitual misdemeanor assault on a law enforcement officer charge. The State then dismissed the habitual felon charge. The trial court sentenced defendant to a minimum of 313 and a maximum of 385 months imprisonment on the attempted first degree murder conviction. The trial court consolidated the two habitual misdemeanor assault convictions and sentenced defendant to a minimum of 20 and a maximum of 24 months imprisonment, to run consecu-

tively with the sentence imposed for defendant's attempted first degree murder conviction.

Defendant appeals, contending that the trial court erred by: (1) requiring him to be physically restrained while in the courtroom and by denying his oral motion that he be allowed to waive his right to be present at trial; (2) denying his motion to dismiss the two habitual misdemeanor assault charges; and (3) denying his motion to dismiss all charges for insufficiency of the evidence.

**[1]** By his first assignment of error, defendant contends the trial court erred by "requiring defendant to be present in Court in the presence of the jury in the condition he was forced to be in—strapped to a chair, cuffed, and wearing a mask—and not allowing defendant to waive his right to be present in Court." At the outset, we note that this assignment of error actually raises two issues of law, namely whether the trial court erred by (1) requiring defendant to be physically restrained while in court, and (2) denying defendant's oral motion to waive his right to be present at the trial. Defendant's first assignment of error therefore violates the mandate of Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law[,]" and as such, this assignment of error is subject to dismissal. *State v. Williams*, 350 N.C. 1, 9, 510 S.E.2d 626, 633, *cert. denied*, 528 U.S. 880, 145 L. Ed. 2d 162 (1999). Nevertheless, we elect in our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure to review both issues raised in defendant's first assignment of error.

**[2]** Our General Assembly has provided as follows regarding the physical restraint of a criminal defendant in the courtroom:

> A trial judge may order a defendant or witness subjected to physical restraint in the courtroom when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons.

N.C. Gen. Stat. § 15A-1031 (2003). In making this determination, the trial judge may consider, *inter alia*, the following factors:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of

mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

*State v. Holmes*, 355 N.C. 719, 728, 565 S.E.2d 154, 162, (quoting *State v. Tolley*, 290 N.C. 349, 368, 226 S.E.2d 353, 368 (1976)), *cert. denied*, 537 U.S. 1010, 154 L. Ed. 2d 412 (2002). When the trial court orders a criminal defendant restrained at trial, "the test on appeal is whether, under all of the circumstances, the trial court abused its discretion." *Tolley*, 290 N.C. at 369, 226 S.E.2d at 369.

In the present case, we conclude that the trial court's determination that it was "both necessary and appropriate for the security of court personnel" to restrain defendant in this manner at trial was supported by ample evidence. Defendant was on trial for attempted first-degree murder and two counts of habitual misdemeanor assault arising out of a brutal attack on his former attorney and his subsequent biting of a sheriff's deputy, which occurred *in the courtroom* during a previous trial and after which it took five men to subdue defendant. At the hearing on defendant's objection to being restrained, the State forecast evidence of defendant's guilty plea from the 1996 Nash County jail incident where he attacked another of his former attorneys while incarcerated. The transcript reveals that defendant spat on a Wake County sheriff's deputy shortly before being brought into court for pretrial proceedings and interrupted the proceedings at various times with profane outbursts. During the pretrial proceedings, defendant was eventually removed from the courtroom to a nearby room, where he "continue[d] to speak very loudly and abusively to the security officers . . . in their presence and in the hearing of the Court." Defendant relayed to his counsel threats to disrupt the trial if he was required to appear in court while physically restrained. Moreover, our review of the transcript indicates that the trial judge complied with the procedural requirements of N.C. Gen. Stat. § 15A-1031 by giving defendant an opportunity to object to being restrained; conducting a hearing following defendant's objection; making appropriate findings of fact following the hearing; entering in the record his reasons for ordering defendant restrained in this manner; and instructing the jury to disregard defendant's restraints.

We conclude that on these facts and pursuant to the factors enumerated in *Tolley*, the trial court did not abuse its discretion in requir-

ing that defendant be secured to his chair, handcuffed, and masked during his trial.

**[3]** The trial court also heard argument on defendant's oral motion to waive his right to be present at trial and denied the motion. Defendant contends the trial court abused its discretion by denying his oral motion. Defendant correctly notes that in a non-capital trial, the defendant's right to be present is personal and may be waived. *State v. Richardson*, 330 N.C. 174, 178, 410 S.E.2d 61, 63 (1991). However, N.C. Gen. Stat. § 15A-1011(d), which governs waiver of appearance by a criminal defendant, provides as follows:

> (d) A defendant may execute a *written waiver of appearance* and plead not guilty and designate legal counsel to appear in his behalf *in the following circumstances*:
>
> (1) The defendant agrees *in writing* to waive the right to testify in person and waives the right to face his accusers in person and agrees to be bound by the decision of the court as in any other case of adjudication of guilty and entry of judgment, subject to the right of appeal as in any other case; and
>
> (2) The defendant submits *in writing* circumstances to justify the request and submits *in writing* a request to proceed under this section; and
>
> (3) The judge allows the absence of the defendant because of distance, infirmity or other good cause.

N.C. Gen. Stat. § 15A-1011(d) (2003) (emphasis added).

In the present case, defendant concedes that he submitted neither a written waiver of appearance nor any other writing in support of his oral motion to waive his right to be present at trial. Defendant has therefore failed to comply with N.C. Gen. Stat. § 15A-1011(d), which by its plain language requires that in order to waive his right to be present at trial, a criminal defendant must submit to the court, *in writing*, the following: (1) a waiver of appearance, (2) an agreement to waive both his right to testify and to confront his accusers, and to be bound by the court's adjudication, (3) an enumeration of the circumstances justifying his request, and (4) a request to proceed under this statute. The language of N.C. Gen. Stat. § 15A-1011(d) is unambiguous and requires no construction by this Court. Accordingly, the trial court did not abuse its discretion by denying defendant's oral

motion to waive his right to appear at trial. Defendant's first assignment of error is overruled.

**[4]** By his second assignment of error, defendant contends the trial court erred by denying his motion to dismiss the two habitual misdemeanor assault charges. We disagree.

Our General Assembly has defined the offense of habitual misdemeanor assault as follows:

> A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of G.S. 14-33(c) or G.S. 14-34 and has been convicted of five or more prior misdemeanor convictions, two of which were assaults. A person convicted of violating this section is guilty of a Class H felony.

N.C. Gen. Stat. § 14-33.2 (2003).

Defendant argues in his brief that because the statute "does not say that misdemeanors that occur at the same time can be counted separately" towards the five prior convictions required for conviction of habitual misdemeanor assault, this Court should construe N.C. Gen. Stat. § 13-33.2 to "require that the five misdemeanors should have to occur on different occasions—which would show a repeated behavior." Defendant argues that under such a construction the evidence would be insufficient to support his habitual misdemeanor assault convictions, because four of defendant's five prior misdemeanor convictions arose from a single incident, defendant's 1996 assault of his attorney at the Nash County jail.

We discern no support for defendant's proposed construction of N.C. Gen. Stat. § 14-33.2 from the plain language of the statute. N.C. Gen. Stat. § 14-33.2 clearly and unambiguously sets forth the elements of the offense of habitual misdemeanor assault: (1) violation of any of the provisions of N.C. Gen. Stat. § 14-33(c) or § 14-34, and (2) five or more prior misdemeanor convictions, (3) two of which were assaults. The statute contains no language which could be reasonably construed as requiring that any of the prior misdemeanor convictions either occur on separate dates or arise from separate incidents. "Where the words of a statute are clear and unambiguous, the words will be given their plain and definite meaning." *State v. Roache*, 358 N.C. 243, 273, 595 S.E.2d 381, 402 (2004). Moreover, we are not persuaded by defendant's argument that because our Legislature has expressly provided that an offender must be convicted of three

*felonies* committed on separate occasions in order to obtain habitual *felon* status, *see* N.C. Gen. Stat. § 14-7.1 (2003), this same "separate occurrences" requirement should be read into the habitual misdemeanor assault statue. To the contrary, from the very fact that the legislature chose to specify that the three felony convictions underlying a habitual felon charge must arise from separate occurrences, we may infer that the legislature would have included a similar specification in N.C. Gen. Stat. § 14-33.2 if it had intended to impose a "separate occurrences" limitation on the offense of habitual misdemeanor assault. *See N.C. Baptist Hospitals, Inc. v. Mitchell*, 323 N.C. 528, 538, 374 S.E.2d 844, 849 (1988).

In a written pretrial motion and in his argument to the trial court, defendant asserted that N.C. Gen. Stat. § 14-33.2 violates the United States Constitution's prohibition against *ex post facto* laws and double jeopardy, as well as the federal constitution's due process and equal protection provisions. In his brief, defendant "concedes that the issues of *ex post facto*, double jeopardy, due process and equal protection have been ruled upon against his claims" before "ask[ing this Court to] reconsider these issues." However, because defendant has presented to this Court no reason, argument, or authority in support of this request, these issues are deemed abandoned. N.C.R. App. P. 28(b)(6) (2004); *State v. Barnes*, 333 N.C. 666, 677, 430 S.E.2d 223, 229, *cert. denied*, 510 U.S. 946, 126 L. Ed. 2d 336 (1993). Moreover, we note this Court has previously held that N.C. Gen. Stat. § 14-33.2 violates neither the *ex post facto* nor double jeopardy provisions of our federal and state constitutions, *State v. Carpenter*, 155 N.C. App. 35, 47-48, 573 S.E.2d 668, 676 (2002), and we are bound by this holding until it is overturned by a higher court, *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Defendant's second assignment of error is without merit.

**[5]** By his final assignment of error, defendant contends the trial court erred by denying his motion to dismiss the attempted first degree murder charge for insufficiency of the evidence. Specifically, defendant argues the State failed to prove the premeditation and deliberation elements of the offense. We disagree.

When ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to all inferences to be drawn from the evidence presented. *State v. Davis*, 325 N.C. 693, 696-97, 386 S.E.2d 187, 189 (1989). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essen-

tial element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). " 'Substantial evidence' simply means 'that the evidence must be existing and real, not just seeming or imaginary.' " *State v. Sexton*, 336 N.C. 321, 361, 444 S.E.2d 879, 902, (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)), *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994).

"The elements of attempted first degree murder are: '(1) a specific intent to kill another person unlawfully; (2) an overt act calculated to carry out that intent, going beyond mere preparation; (3) the existence of malice, premeditation, and deliberation accompanying the act; and (4) a failure to complete the intended killing.' " *State v. Poag*, 159 N.C. App. 312, 318, 583 S.E.2d 661, 666, (quoting *State v. Peoples*, 141 N.C. App. 115, 117, 539 S.E.2d 25, 28 (2000)), *disc. review denied*, 357 N.C. 661, 590 S.E.2d 857 (2003).

Defendant contends the State has presented insufficient evidence of his premeditation and deliberation to kill Hughes, arguing in his brief that the assault "happened too quickly for there to be premeditation and deliberation." Our appellate courts have held that "[p]remeditation is present where the defendant formed a specific intent to kill the victim some period of time, no matter how short, prior to perpetrating the actual act. Deliberation is acting in a cool state of blood and not under the influence of a violent passion." *State v. Andrews*, 154 N.C. App. 553, 561, 572 S.E.2d 798, 804 (2002), *cert. denied*, 358 N.C. 156, 592 S.E.2d 696 (2004) (citations omitted). However, "[o]ne may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and to a large extent controlled by passion at the time." *State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991).

Our Supreme Court has stated that premeditation and deliberation "are usually proven by circumstantial evidence because they are mental processes that are not readily susceptible to proof by direct evidence." *State v. Sierra*, 335 N.C. 753, 758, 440 S.E.2d 791, 794 (1994). Among the circumstances from which premeditation and deliberation may properly be inferred in a prosecution for first degree murder are:

(1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing,

(3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*Vause*, 328 N.C. at 238, 400 S.E.2d at 62.

In the present case, the uncontroverted evidence tended to show that Hughes, who was representing defendant in the sentencing phase of his trial on multiple felony counts when the assault took place, did nothing to provoke defendant prior to the assault. Hughes was listening to the district attorney and the trial judge and was neither looking at nor speaking to defendant when defendant struck him. There was evidence that defendant became agitated during Hughes's closing argument earlier in the day, and that defendant again became agitated as the verdict was being read. Defendant then rolled or shook his head in disgust and balled up his fist as the district attorney spoke during sentencing. During and immediately after the assault, defendant utilized violent and profane language to repeatedly indicate that he intended to kill Hughes. Defendant struck Hughes with sufficient force to fracture Hughes's skull; continued to punch and kick Hughes after the initial blow rendered Hughes unconscious; bit one of the sheriff's deputies who was attempting to subdue him; and attempted to bite Hughes as he lay prone on the courtroom floor. We hold that when taken in the light most favorable to the State, there is substantial evidence of defendant's premeditation and deliberation to kill Hughes. Accordingly, the trial court properly denied defendant's motion to dismiss the attempted first degree murder charge, and this assignment of error is without merit.

No error.

Judges McGEE and McCULLOUGH concur.