STATE OF NORTH CAROLINA v. GERARDO COLEMAN

No. COA02-1644

(Filed 18 November 2003)

**1. Jury— deliberations—jury's note—juror not following law**

The trial court did not err in an armed robbery and felony murder case by failing to make further inquiry on the second day of jury deliberation after receiving a note from the jury alleging that one juror was not following the law and requesting that the juror at issue be replaced, because: (1) the trial court informed the jury that the juror could not be replaced and instructed the jury as to its duty to follow the law; (2) defendant did not object to the trial court's instruction to the jury regarding the jury's note,

did not request a mistrial, and did not ask the court to make an inquiry; (3) defendant opposed the State's suggestion that an alternate juror be seated to replace the challenged juror; and (4) it was within the discretion of the trial court to determine whether an inquiry was necessitated by the note from the jury, and there was no obligation to investigate further based on the ambiguity of the note's allegation and the corrective measure taken by the trial court in its subsequent instruction.

## 2. Constitutional Law— right to be present at trial—bailiff sent to admonish absent juror

The trial court did not violate defendant's right to be present at his capital trial when it sent a bailiff to admonish an absent juror not to discuss the case with anyone while court was in recess, because: (1) while a bailiff may not attempt to instruct jurors as to the law, a simple reminder to the jurors that they are to abide by the court's earlier instructions should not be considered an instruction as to law; (2) the communications did not relate to defendant's guilt or innocence, nor would defendant's presence be helpful to his defense; and (3) it is assumed the bailiff limited her instruction to the juror as directed by the trial court.

## 3. Homicide— felony murder—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of felony murder based on armed robbery, because: (1) felony murder based on armed robbery does not depend on whether the intent to commit the taking of property was formed before or after the killing; and (2) based on the evidence, a reasonable juror could infer that the killing and the robbery were part of a single transaction.

## 4. Homicide— first-degree murder—failure to instruct on lesser-included offense of involuntary manslaughter

The trial court did not err by denying defendant's request to instruct on involuntary manslaughter as a lesser-included offense of first-degree murder, because: (1) the trial court instructed on second-degree murder; and (2) the jury's verdict of first-degree murder based on felony murder indicated the jury was not coerced into a verdict when it could have convicted defendant on the lesser charge of second-degree murder.

**5. Constitutional Law— double jeopardy—felony murder— failure to arrest judgment on armed robbery charges**

The trial court did not violate defendant's double jeopardy rights by arresting judgment on only the conviction for attempted armed robbery and by entering judgment on the three armed robbery convictions in addition to first-degree murder, because: (1) in this instance where no specific underlying felony was noted in the jury instructions on felony murder, and there are multiple felony convictions which could serve as the underlying felony for purposes of the felony murder conviction, it is in the discretion of the trial court as to which felony will serve as the underlying felony for purposes of sentencing; and (2) armed robbery and attempted armed robbery are both classified as Class D felonies for purposes of sentencing.

**6. Homicide— first-degree murder—short-form indictment— constitutionality**

The short-form indictment used to charge defendant with first-degree murder was sufficient.

Appeal by defendant from judgment dated 10 April 2002 by Judge F. Donald Bridges in Superior Court, Gaston County. Heard in the Court of Appeals 18 September 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Edwin W. Welch, for the State.*

*Office of the Appellate Defender, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

McGEE, Judge.

Timothy M. Lollis (Lollis), John D. Mason (Mason), Karl L. Gacusana (Gacusana), R. Chad Melton (Melton), and David C. Gregg (Gregg) were together on the night of 5 September 1999 at an apartment leased by Lollis and Gregg in Belmont, North Carolina. Preston Wells (Wells) telephoned Gregg to say that he would be coming over with his girlfriend, Beth Nelson (Nelson). Gregg called Penny Riggan (Riggan) and told her Wells and Nelson were coming. Gregg was aware that Riggan and Nelson did not like each other.

Riggan arrived at the apartment, followed by Wells and Nelson. Everyone sat in the living room and when Wells left to use the restroom, Riggan started hitting Nelson, causing a knot to develop

under Nelson's eye. Riggan continued to beat Nelson until Wells returned and broke up the fight. Wells, Nelson, and Riggan left the apartment. Wells called Gregg about twenty minutes later and asked whether the fight had been planned. Gregg informed Wells that there had been no plan.

After leaving the apartment, Nelson told Mary Suzanne Jackson (Jackson), who lived with Gerardo Coleman (defendant), about her altercation with Riggan. Jackson and Nelson agreed to "settle the score" and "rough up Riggan." Jackson brought along a tire iron in the event the "boys wanted to get in on it." Nelson, Jackson, Wells and defendant drove back to the apartment at about 11:00 p.m.

Nelson and Jackson entered the apartment and asked for Riggan. Lollis, Melton, Gregg, Gacusana and Mason were sitting in the living room. Defendant entered the apartment, armed with a shotgun, chambered a round of ammunition and pointed the shotgun at Lollis. Defendant said, "You all ----ed up, you all are going to die tonight." Everyone was ordered to get on the floor, empty their pockets and place their money on the table.

Melton refused to remove his necklace and defendant hit him in the head with the shotgun. Lollis and Melton removed their watches, Gacusana and Mason placed money on the floor and coffee table, and Gregg put his wallet on the coffee table. Jackson snatched off Gacusana's and Melton's chain necklaces. Defendant put the shotgun to Gacusana's face and Gacusana handed over his bracelet. Jackson and Nelson collected the jewelry and money.

Jackson and Nelson began arguing with Gregg about the fight with Riggan. Jackson was standing in front of and to the left of defendant, Riggan was standing in front of and to the right of defendant. Jackson swung the tire iron at Gregg. Gregg rose up, lifted his arms and leg in the air, moved his head back, and leaned back against the wall. Defendant raised his shotgun and fatally shot Gregg in the head. Defendant, Nelson, and Jackson left the apartment and got into Wells's car. Melton fired at the car several times with a shotgun.

Early the following morning, Gaston County police officers took statements from Gacusana, Mason, Melton, and Lollis. The police officers located a tire iron in the front yard of the apartment building and two Federal high-power, twelve-gauge shotgun casings along the road in front of the apartment, which were from a shotgun found in the apartment.

After locating Wells's car in the parking lot outside Jackson's apartment, the Gaston County police towed the car to the Gaston County Police Department. Gaston County police officers obtained a warrant for Jackson's arrest on the morning of 7 September 2002. In cooperation with the Charlotte-Mecklenberg Police Department, the Gaston County police approached Jackson's apartment. Defendant and Jackson walked out but immediately retreated to the apartment and closed the door. No one responded when police knocked on the door. When a SWAT team arrived an hour later, Jackson and defendant surrendered. Jackson consented to a search of her apartment and police found four unfired shotgun shells, some wet clothing and the chain necklaces stolen from Gacusana and Melton. Forensic analyses found no blood on any clothing. Defendant gave two written, signed statements to the police. In the first statement, defendant denied having anything to do with the robbery and murder. Police Major Johnny Phillips (Major Phillips) untruthfully told defendant that Jackson had told police that defendant had accidently shot someone. Major Phillips asked defendant to show him how he had held the shotgun and defendant complied by placing one hand slightly below his waist and the other extended out. In his second statement, defendant stated he could not recall pulling the trigger, but that he had walked towards Gregg and Gregg had kicked the shotgun, causing it to go off.

Officer B.F. Harris of the Gaston County Police Department testified that the burn mark on Gregg's head indicated that the shotgun was within inches of Gregg when it was fired. At trial, Lollis, Mason, Gacusana, and Melton identified defendant as the shooter.

Defendant was convicted of three counts of armed robbery and one count of felony murder. The trial court arrested judgment on defendant's conviction for attempted armed robbery in accordance with the doctrine of felony murder. Defendant appeals.

I.

[1] Defendant first assigns error to the trial court's decision on the second day of jury deliberation not to make further inquiry after receiving a note from the jury alleging that one juror was "not following the law." There was no additional elaboration in the jury's note as to juror misconduct except a request that the juror at issue be replaced. In response to the note, the trial court informed the jury that a juror could not be replaced and instructed the jury as to its duty to follow the law.

The record does not show that defendant objected to the trial court's instruction to the jury regarding the jury's note. At the close of the instruction, defendant stated, "I don't have any objection to what the Court instructed." Defendant failed to request a mistrial or to ask the trial court to make an inquiry. Defendant even opposed the State's suggestion that an alternate juror be seated to replace the challenged juror. Defendant therefore failed to properly preserve this issue for appellate review. Nonetheless, this Court exercises its discretion to consider the merits of defendant's argument pursuant to N.C.R. App. P. 2.

"The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal." *State v. Bonney*, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991). An inquiry by the trial court is generally only required where there is an indication that some prejudicial conduct has taken place. *State v. Barnes*, 345 N.C. 184, 226, 481 S.E.2d 44, 67, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). To warrant an investigation, "the circumstances must be such as not merely to put suspicion on the verdict, because there was an opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion" it is a decision left to the trial court's discretion. *State v. Aldridge*, 139 N.C. App. 706, 713, 534 S.E.2d 629, 634, *disc. denied*, 353 N.C. 269, 546 S.E.2d 114 (2000) (quoting *State v. Johnson*, 295 N.C. 227, 234-35, 244 S.E.2d 391, 396 (1978)); *see also*, *State v. Murillo*, 349 N.C. 573, 599-600, 509 S.E.2d 752, 767 (1998), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999) (there is no absolute affirmative duty to investigate juror misconduct absent a report of prejudicial conduct). The trial court's ruling on juror misconduct will only be reversed upon clear abuse of discretion. *Aldridge*, 139 N.C. App. at 713, 534 S.E.2d at 634 (trial court did not abuse its discretion in failing to further inquire into jury misconduct where the allegation was based on one anonymous telephone call).

In the case before us, it was within the discretion of the trial court to determine whether an inquiry was necessitated by the note from the jury. Based on the ambiguity of the note's allegation and the corrective measure taken by the trial court in its subsequent instruction, there was no obligation to investigate further. Accordingly, we overrule defendant's assignment of error.

II.

[2] The second day of jury deliberations began at 9:30 a.m. and by 12:30 p.m., a juror had informed the trial court that, due to a personal problem, she would be unable to return to the courtroom until later that afternoon. The trial court so informed the parties and released them for lunch, after admonishing the jurors not to discuss the case with anyone. The State and defendant stated they had no preference as to whether the trial judge similarly personally admonished the absent juror or had the bailiff remind the juror. The trial court had the bailiff do so. The record fails to indicate whether defendant, defendant's counsel, or the court reporter was present for the admonitions given by the bailiff. Defendant argues that the trial court violated his right to be present at his capital trial, when it sent a bailiff to admonish the juror.

Under the Confrontation Clause in Article I, Section 23 of the North Carolina Constitution, an accused is guaranteed the right to be present at each and every stage of his capital trial and this right extends to "all times during the trial when anything is said or done which materially affects defendant as to the charge against him." *State v. Chapman*, 342 N.C. 330, 337-38, 464 S.E.2d 661, 665 (1995), *cert. denied*, 518 U.S. 1023, 135 L. Ed. 2d 1077 (1996); *see also*, U.S. Const. amend. IV. However,

> while a bailiff certainly may not attempt to instruct jurors as to the law, a simple reminder by the bailiff to the jurors that they are to abide by the court's earlier instructions should not be considered an instruction as to law. Communications such as these do not relate to defendant's guilt or innocence. The subject matter of these communications in no way implicates defendant's confrontation rights, nor would defendant's presence have been useful to his defense.

*State v. Gay*, 334 N.C. 467, 482, 434 S.E.2d 840, 848 (1993) (no reversible error where the trial court had the bailiff instruct the jury to continue to abide by his earlier instructions during a break). In the case before us, the trial court had previously admonished the jury on several occasions not to discuss the case with each other or with anyone else.

Defendant alleges that because no record exists as to the bailiff's conversation with the absent juror, this Court is unable to conduct a proper review of the issue. Our Supreme Court stated in *May* that

where a bailiff was instructed to inform the jury they could recess, "without anything in the record to show something else happened, we will assume the bailiff followed the court's instructions." *State v. May*, 334 N.C. 609, 615, 434 S.E.2d 180, 183 (1993), *cert. denied*, 510 U.S. 1198, 127 L. Ed. 2d 661 (1994) (assuming bailiff followed trial court's instruction to inform jury they were free to leave for a break), *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001) (assuming the clerk limited any conversation to administrative and logistical matters). Although the better practice is for the trial court to issue admonitions itself, as our Supreme Court stated in *May*, "[i]t would impose a heavy burden on our courts if a court reporter were required to accompany a bailiff every time he is with a jury in order to make a record of what was said." *May*, 334 N.C. at 615, 434 S.E.2d at 183.

Because we assume the bailiff limited her instruction to the juror as directed by the trial court and such communications do not relate to defendant's guilt or innocence, nor would they be helpful to his defense, we find no violation of defendant's constitutional rights. These assignments of error are overruled.

III.

**[3]** Defendant next argues that the trial court erred by failing to grant defendant's motion to dismiss the felony murder charge. Defendant argues that the State presented insufficient evidence that Gregg's death occurred in the perpetration or attempted perpetration of a felony.

"A murder which shall be . . . committed in the perpetration or attempted perpetration of any . . . robbery . . . shall be deemed to be murder in the first degree." N.C. Gen. Stat. § 14-17 (2001). "In felony murder, the killing may, but need not, be intentional. There must, however, be an unbroken chain of events leading from the attempted felony 'to the act causing death, so that the homicide is part of a series of events forming one continuous transaction.' " *State v. Gibbs*, 335 N.C. 1, 51-52, 436 S.E.2d 321, 350 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994) (quoting *State v. Shrader*, 290 N.C. 253, 261, 225 S.E.2d 522, 528 (1976)). "The evidence is sufficient to support a charge of felony murder based on the underlying offense of armed robbery where the jury may reasonably infer that the killing and the taking of the victim's property were part of one continuous chain of events." *State v. Handy*, 331 N.C. 515, 529, 419 S.E.2d 545, 552 (1992). Felony murder based on armed robbery does not depend on whether

the intent to commit the taking of property was formed before or after the killing. *Id.*

When considering a motion to dismiss on the grounds of insufficiency of the State's evidence, the trial court must determine whether there is substantial evidence of each element of the offense and that defendant committed that offense. *State v. Irwin*, 304 N.C. 93, 97, 282 S.E.2d 439, 443 (1981). All evidence is to be considered in the light most favorable to the State and all reasonable inferences are to be drawn therefrom. *Id.* at 98, 282 S.E.2d at 443. Where there is a reasonable inference of defendant's guilt from the evidence, the jury must decide whether that evidence "convinces them beyond a reasonable doubt of defendant's guilt." *Id.*

The evidence presented by the State in this case showed that defendant entered the apartment armed with a loaded shotgun, chambered a round of ammunition, verbally threatened the occupants with death, hit Melton in the head to coerce surrender of his property, aimed the shotgun at the occupants, and shot Gregg in the head at close range while Gregg was involved in a confrontation with one of the robbers. Based on this evidence, a reasonable juror could infer that the killing and the robbery were part of a single transaction, supporting the felony murder charge. The trial court did not err in denying defendant's motion to dismiss. Defendant's assignment of error is overruled.

IV.

[4] During the jury instruction conference, defendant requested that both second degree murder and involuntary manslaughter be submitted to the jury as lesser included offenses of first degree murder, which the trial court denied. Defendant assigns error to the trial court's failure to instruct the jury as to involuntary manslaughter and contends his constitutional rights were violated under the Fourteenth Amendment to the United States Constitution and under Article I, Section 19 of the North Carolina Constitution, as well as North Carolina common and statutory law.

The trial court instructed the jury it could find defendant guilty of (1) first degree murder, based on both the theory of felony murder and/or premeditated murder, (2) second degree murder, or (3) not guilty. The jury convicted defendant of first degree murder based on felony murder but not on the grounds of premeditation and deliberation.

STATE v. COLEMAN

[161 N.C. App. 224 (2003)]

The law is well settled that " 'a defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to the jury as possible alternative verdicts.' " *State v. Millsaps*, 356 N.C. 556, 562, 572 S.E.2d 767, 772 (2002) (quoting *State v. Drumgold*, 297 N.C. 267, 271, 254 S.E.2d 531, 533 (1979)). However, the trial court is not required to "submit lesser included degrees of a crime to the jury 'when the State's evidence is positive as to each and every element of the crime charged *and there is no conflicting evidence relating to any element of the charged crime.*' " *Id.* (quoting *Drumgold*, 297 N.C. at 271, 254 S.E.2d at 533) (emphasis in original).

In instances where a trial court has submitted to the jury the possible verdicts of first degree murder based on premeditation and deliberation, second degree murder, and not guilty, our Supreme Court has

adopted the rule that . . . a verdict of first-degree murder based on premeditation and deliberation renders harmless the trial court's improper failure to submit voluntary or involuntary manslaughter.

*State v. Price*, 344 N.C. 583, 590, 476 S.E.2d 317, 321 (1996). The Court further stated that

"A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of [the defendant's] guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant."

*Id.* at 590-91, 476 S.E.2d at 321 (quoting *State v. Judge*, 308 N.C. 658, 664-65, 303 S.E.2d 817, 821-22 (1983)). As noted in *Price*, this rationale is rooted in the United States Supreme Court's concern in *Keeble v. United States*, 412 U.S. 205, 36 L. Ed. 2d 844 (1973), that a jury should not be coerced into a verdict because there was no lesser included offense submitted to the jury which better fit the evidence. *Id.*; *see also*, *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, *reh'g denied*, 501 U.S. 1277, 115 L. Ed. 2d 1109 (1991).

We find that the reasoning of our Supreme Court in *Price* applicable in the case before us. The jury's verdict of first degree murder based on felony murder indicates the jury was not coerced, since they could have convicted defendant on the lesser charge of second degree murder. Therefore, the failure to instruct the jury on involun-

tary manslaughter did not harm defendant. Defendant's assignment of error is without merit.

V.

**[5]** Defendant asserts that the trial court erred in arresting judgment on only the conviction for attempted armed robbery and in entering judgment on the three armed robbery convictions, in addition to first degree murder.

In accordance with the state and federal prohibitions against double jeopardy, our Supreme Court firmly established that "a defendant may not be punished both for felony murder and for the underlying, 'predicate' felony, even in a single prosecution." *State v. Gardner*, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986). The underlying felony supporting the felony murder conviction effectively merges into the first degree murder conviction and any judgment on the underlying felony must be arrested. *State v. Barlowe*, 337 N.C. 371, 446 S.E.2d 352 (1994).

Defendant failed to object at trial to the trial court's decision to arrest judgment on only the attempted armed robbery verdict.

> By failing to move in the trial court to arrest judgment on either conviction or otherwise to object to the convictions or sentences on double jeopardy grounds, defendant has waived his right to raise this issue on appeal.

*State v. McLaughlin*, 321 N.C. 267, 272, 362 S.E.2d 280, 283 (1987). Although the issue was not properly preserved, we consider the merits of defendant's argument pursuant to N.C.R. App. P. 2.

Defendant contends that the trial court's instructions on felony murder failed to specify which armed robbery or attempted armed robbery served as the underlying felony for a possible felony murder conviction. Defendant thus argues that because the jury could have used any of the armed robbery convictions or the attempted armed robbery conviction as the basis for finding him guilty of felony murder, the trial court should have arrested judgment on all the convictions that could have served as the basis for the felony murder conviction.

We agree with defendant that the trial court's instructions to the jury were ambiguous as to what underlying felony formed the basis of the felony murder charge. Furthermore, we cannot determine if the jury was unanimous in which felony served as the underlying felony

for purposes of the felony murder verdict. A similar concern arose in *State v. Lotharp*, 356 N.C. 420, 571 S.E.2d 583 (2002), where the defendant argued that the trial court should have required that the jury be unanimous as to whether the deadly weapon in a first degree sexual assault case was the knife or the defendant's hands. In *Lotharp*, disjunctive instructions to the jury had permitted the jury to choose between two alternative instrumentalities as the deadly weapon inflicting serious injury. Our Supreme Court reversed this Court and adopted the dissenting opinion of Judge Timmons-Goodson which noted:

> The instructions clearly required the jury to find that defendant assaulted the victim using a deadly weapon, thereby inflicting serious injury. Accordingly, there was no ambiguity as to whether or not the jury unanimously found each necessary element for the crime of assault with a deadly weapon inflicting serious injury . . . . Because the instructions in the instant case allowed the jury to convict defendant of a single wrong by alternative means . . . the instructions were not fatally ambiguous.

*State v. Lotharp*, 148 N.C. App. 435, 447, 559 S.E.2d 807, 814 (2002) (Timmons-Goodson, J., dissenting).

The reasoning of *Lotharp* is relevant to our inquiry in the case before us. Only one underlying felony is required to support a felony murder conviction, and in this case, the jury convicted defendant of four separate felonies which could have served as the underlying felony. As in *Lotharp*, "because the instructions in the instant case allowed the jury to convict defendant of a single wrong by alternative means . . . the instructions were not fatally ambiguous." *Id.*

The remaining question is whether the trial court has the discretion to select which felony conviction serves as the underlying felony for purposes of the merger rule as it applies to felony murder. In *State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986), the defendant was convicted of first degree rape, first degree sexual offense, and first degree kidnapping. The defendant was separately sentenced for each offense; on appeal, the defendant argued that this was a double jeopardy violation because the defendant's rape or sexual assault conviction is a necessary element of first degree kidnapping. In remanding the case for a new sentencing hearing, our Supreme Court instructed the trial court that it "may arrest judgment on the first degree kidnapping conviction and resentence defendant for second degree kidnapping or it may arrest judgment on one of the sexual assault

convictions." *Id.* at 24, 340 S.E.2d at 41. The Supreme Court thereby stated the trial court in *Freeland* had discretion in sentencing to: (1) arrest judgment on either of the sexual assault verdicts because one must serve as an element of first degree kidnapping in order for the verdict to stand or (2) to sentence defendant for second degree kidnapping which does not require the element that the person either was not released in a safe place or had been seriously injured or assaulted. N.C. Gen. Stat. § 14-39 (2001).

Applying *Freeland* to the case before us, there are several factors that show in this instance where no specific underlying felony was noted in the jury instructions on felony murder, and where there are multiple felony convictions which could serve as the underlying felony for purposes of the felony murder conviction, it is in the discretion of the trial court as to which felony will serve as the underlying felony for purposes of sentencing. This is a rare circumstance where armed robbery and attempted armed robbery are both classified as Class D felonies for purposes of sentencing. *See,* N.C. Gen. Stat. § 14-87 (2001). Accordingly, the trial court did not err in arresting judgment on defendant's attempted armed robbery conviction and in sentencing defendant for three armed robbery convictions. This assignment of error is overruled.

## VI.

[6] In defendant's final assignment of error, he argues that the trial court erred in entering judgment and sentencing him to life imprisonment without parole because the indictment was insufficient to sustain the first degree murder verdict and sentence. He maintains the trial court violated his federal and State constitutional rights under U.S. Const. amends. V, VI, XIV and N.C. Const. art. I, §§ 19, 22, and 23.

This issue has been decided by our Supreme Court which has consistently held that the "short-form indictment is sufficient to charge a defendant with first-degree murder." *State v. Barden,* 356 N.C. 316, 384, 572 S.E.2d 108, 150 (2002), *cert. denied,* —— U.S. ——, 155 L. Ed. 2d 1074 (2003). "The short-form murder indictment authorized by N.C. Gen. Stat. § 15-144 (2001) gives a defendant notice that he is charged with first-degree murder and that the maximum penalty to which he could be subject is death." *State v. Smith,* 152 N.C. App. 29, 34, 566 S.E.2d 793, 797, *cert. denied,* 356 N.C. 311, 571 S.E.2d 208 (2002). This Court is bound by the decisions of our Supreme Court; therefore, these assignments of error are overruled.

Defendant has failed to present any argument in support of his remaining assignments of error and they are thus deemed abandoned. N.C.R. App. P. 28(b)(6).

This Court notes that on the "Judgment/Order or Other Disposition" form completed by the trial court, the verdict for the attempted armed robbery of Timothy Lollis, file number 99CRS31141 was marked as "not guilty," which is contrary to the verdict issued by the jury. This case is therefore remanded to correct a clerical error on the form.

No error in trial. Remand for correction of clerical error.

Judges HUNTER and CALABRIA concur.