STATE OF NORTH CAROLINA v. JAAMALL DENARIS OGLESBY, Defendant

No. COA04-1534

(Filed 6 December 2005)

### 1. Appeal and Error— preservation of issues—denial of motion in limine—no objection at trial

An appeal was heard from the denial of a pretrial motion to suppress, even without an objection at trial, to prevent a manifest injustice to a defendant who may have relied on a statute presumed to be constitutional at the time of trial. N.C.G.S. § 8C-1, Rule 103(a)(2).

### 2. Juveniles— questioning—requested presence of aunt denied—not a parent, custodian, or guardian

A juvenile defendant had no right to the presence of an aunt during questioning pursuant to N.C.G.S. § 7B-2101, and his motion to suppress was correctly denied, because the aunt was not a custodian or guardian where defendant had never lived with the aunt, she neither had custody of him nor signed school papers on his behalf, and there was nothing to indicate that any governmental entity conferred legal authority on the aunt.

### 3. Criminal Law— defendant shackled during trial—no abuse of discretion

There was no abuse of discretion in ordering a defendant shackled during trial where the bailiff had expressed concern that defendant would run, the matter was addressed in defendant's presence but without the jury, the shackles were not to be seen by the jury, defendant would not have to walk or stand before the jury in shackles, and, although the jury was not instructed to ignore the shackles, there was no showing that the jurors were aware of or affected by the restraint.

### 4. Homicide— first-degree murder—short-form indictment—validity

An indictment which did not address all of the elements of first-degree murder was valid.

### 5. Sentencing— aggravating factor—*Blakely* error

The trial court erred when sentencing defendant in the aggravated range for armed robbery by finding an aggravating factor where the facts on which the factor was based were neither

presented to the jury, proved beyond a reasonable doubt, nor stipulated by defendant.

**6. Constitutional Law— double jeopardy—felony murder and underlying felony**

The trial court violated double jeopardy by sentencing defendant for both first-degree kidnapping and attempted armed robbery where the jury had been instructed that both could be the underlying felony for felony murder. While there is an argument that judgment could be entered on neither underlying felony, prior Court of Appeal decisions require arrest of judgment on one of those felonies.

Appeal by Defendant from judgments entered 28 May 2004 by Judge Catherine C. Eagles in Superior Court, Forsyth County. Heard in the Court of Appeals 23 August 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan P. Babb, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

WYNN, Judge.

Once a juvenile in custody requests the presence of a parent, or any one of the parties listed in North Carolina General Statute section 7B-2101 (2004), the juvenile may not be interrogated further until counsel, parent, guardian, or custodian has been made available to him. *State v. Branham*, 153 N.C. App. 91, 95, 569 S.E.2d 24, 27 (2002). Here, Defendant (a sixteen-year old juvenile) contends that the trial court should have suppressed his statements made after his request to call his aunt during a custodial interrogation. Because Defendant's aunt was neither a parent nor one of the listed parties in General Statute section 7B-2101, we hold that he had no right to her presence during police questioning.

However, we remand for resentencing on the two counts of robbery with a dangerous weapon under the *Blakely* decision, and remand to arrest judgment on the first-degree kidnaping or the attempted robbery with a dangerous weapon offenses on double-jeopardy grounds.

The record reflects that on the morning of 10 September 2002, Ronnie Owens and Scott Jester worked as cleaners at Copeland's

Restaurant in Winston-Salem. At around 4:00 a.m., Owens could not find Jester; noticed that his car was missing; and at around 7:00 a.m., reported those facts to a police officer. Jester's body was later discovered on the side of a road and the car was recovered.

Meanwhile, during the early morning hours of that same day, Sarah Cranford met her boyfriend, Antwan James, at his apartment along with Robert Davis and Defendant Jaamall Denaris Oglesby. At their instruction, she eventually drove the men in her vehicle to Copeland's Restaurant because Defendant said he needed to pick up money that someone owed him. At Copeland's, Defendant and Davis exited the vehicle and later returned driving another vehicle containing a third passenger, Jester. Davis instructed Cranford to follow them and the two cars drove on Interstate 40 until Davis stopped at the US 52 South exit. Thereafter, Defendant pushed Jester out from the back seat, exited the car with a gun in his hand, ordered Jester to lay face down on the ground, began to walk away, and then shot him three times in the back of the head. Defendant got back into the vehicle and drove off with Cranford following in her car.

Learning that the police wanted to speak to James, Cranford drove James to the police station on 11 September 2002. Cranford also spoke to the police and later pled guilty to being an accessory after the fact to murder.

The police also interviewed Davis who told of two robberies taking place on 7 and 8 September 2002, in the commission of which Defendant used the same gun as that used to kill Jester. At Defendant's trial, Davis testified about the murder of Jester stating that Defendant made Jester get out of the car, Jester pled for his life and told Defendant he had a young child, and Defendant shot Jester three times in the back of the head. Davis pled guilty to second-degree murder, second-degree kidnaping, and attempted robbery.

Defendant also made statements to the police, confessing to the robberies on 7 and 8 September 2002, to which Defendant later pled guilty, and ultimately confessing to the murder of Jester. Defendant, who was sixteen years old at that time, was advised of his Miranda rights and signed a writing stating:

> I have read or had read to me the above statement of my rights, and had rights explained to me by a police officer. Knowing these rights, I do not want a lawyer, parent, guardian, or custodian present at this time. I waive these rights knowingly. I willingly agree to answer questions and/or make a statement.

During his interrogation, Defendant asked to telephone his aunt but did not provide the name of his aunt; inform the police that his aunt was a parent, guardian, or custodian; or ask for her presence during the interrogation.

Defendant was convicted of felony murder, first-degree kidnaping, and attempted robbery with a dangerous weapon. Defendant was sentenced to life imprisonment without parole for the felony murder, in the presumptive sentence ranges for first-degree kidnaping and attempted robbery, and in the aggravated sentence range for the two counts of robbery with a dangerous weapon.

---

On appeal to this Court, Defendant first argues that the trial court erred in denying his motion to suppress his statement made during a custodial interrogation because officers did not cease questioning after he asked to call his aunt. The State responds that this argument is neither preserved for appellate review nor meritorious.

**[1]** A pretrial motion to suppress is a type of motion *in limine*. *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 84 (2004). "[A] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam) (citations omitted). "[T]hus an objection to an order granting or denying the motion is insufficient to preserve for appeal the question of the admissibility of the evidence." *T & T Dev. Co. v. S. Nat'l Bank of S.C.*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 349 (1997) (citation omitted). "[A] party must have presented to the trial court a timely request, objection or motion" at trial to preserve the subject of the suppression motion for appeal. N.C. R. App. P. 10(b)(1).

Before trial, Defendant brought a motion to suppress his statement made during a custodial interrogation when officers did not cease questioning after Defendant asked to call his aunt. However, Defendant failed to object to the evidence during trial. Defendant therefore failed to preserve for appeal the question of the admissibility of his statement.

The General Assembly recently amended Rule 103(a) of the North Carolina Rules of Evidence to provide that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either

at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2004). This Court, however, recently held that "to the extent that N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) is inconsistent with N.C. R. App. P. 10(b)(1), it must fail[,]" and that a motion to suppress made prior to trial does not preserve the subject of the suppression motion for appeal. *State v. Tutt,* 171 N.C. App. 518, 524, 615 S.E.2d 688, 692 (2005). Nonetheless, because it would be a manifest injustice to Defendant not to review his appeal on the merits where he may have relied on a procedural statute that was presumed constitutional at the time of trial, we review the issue under Rule 2 of the North Carolina Rules of Appellate Procedure. N.C. R. App. P. 2.

[2] General Statutes section 7B-2101 states, *inter alia,* that "[a]ny juvenile in custody must be advised prior to questioning: . . . [t]hat the juvenile has a right to have a ***parent, guardian, or custodian*** present during questioning[.]" N.C. Gen. Stat. § 7B-2101 (emphasis added). "Once a juvenile defendant has requested the presence of a parent, or any one of the parties listed in the statute, defendant may not be interrogated further 'until [counsel, parent, guardian, or custodian] has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' " *State v. Branham,* 153 N.C. App. 91, 95, 569 S.E.2d 24, 27 (2002) (quoting *Michigan v. Jackson,* 475 U.S. 625, 626, 89 L. Ed. 2d 631, 636 (1986) (internal citations and quotations omitted)). Where the presence of a party not listed in the statute is requested, however, nothing indicates that the interrogation should be halted.

Defendant concedes in his appellate briefing that his aunt was neither a parent nor a custodian. Instead he argues that his aunt was a guardian.

In *State v. Jones,* 147 N.C. App. 527, 540, 556 S.E.2d 644, 652 (2001), *disc. review denied,* 355 N.C. 351, 562 S.E.2d 427 (2002), this Court held an aunt to be a guardian for purposes of General Statute section 7B-2101. The Court indicated that the defining feature of guardianship is legal authority conferred by the government upon the guardian as to a minor. *Id.* In *Jones,* the aunt not only fed, clothed, and housed the defendant, but also received welfare payments for the defendant's care and enrolled the defendant in school. *Id.* at 535-40, 556 S.E.2d at 650-52. Because both the Department of Social Services and the local school system gave the aunt lawful authority over the defendant, the aunt was deemed to be the defendant's guardian. *Id.* at 540, 556 S.E.2d at 652.

In the case at bar, Defendant's aunt acknowledged that Defendant had never lived with her, and that she neither had custody of him nor signed school papers on his behalf. Nothing before this Court indicates that any governmental entity conferred legal authority on the aunt as to Defendant. The aunt was, therefore, not a guardian. Because Defendant's aunt was not a parent, custodian, or guardian, he had no right to her presence during questioning pursuant to General Statute section 7B-2101. Defendant's argument is therefore without merit.

**[3]** Defendant next contends that the trial court erred in overruling his objection to being restrained during his trial without making findings of fact and where no evidence supported shackling.

A trial court may order that a defendant be physically restrained when the court "finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons" N.C. Gen. Stat. § 15A-1031 (2004). "The propriety of physical restraints depends upon the particular facts of each case[.]" *State v. Thomas*, 134 N.C. App. 560, 568, 518 S.E.2d 222, 228 (1999). "When the trial court orders a criminal defendant restrained at trial, 'the test on appeal is whether, under all of the circumstances, the trial court abused its discretion.' " *State v. Forrest*, 168 N.C. App. 614, 621, 609 S.E.2d 241, 245 (2005) (quoting *State v. Tolley*, 290 N.C. 349, 369, 226 S.E.2d 353, 369 (1976)); *State v. Holmes*, 355 N.C. 719, 727, 565 S.E.2d 154, 161 (2002) (where the defendant failed to object on constitutional grounds at trial, "[w]e address only whether the trial court abused its discretion in ordering that defendant be restrained.").

If the judge orders a defendant or witness restrained, he must:

(1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained and his counsel, if any, the reasons for his action; and

(2) Give the restrained person an opportunity to object; and

(3) Unless the defendant or his attorney objects, instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt.

If the restrained person controverts the stated reasons for restraint, the judge must conduct a hearing and make findings of fact.

N.C. Gen. Stat. § 15A-1031. Where the record does not indicate that a defendant's shackles are visible to the jury, "the risk is negligible that the restraint undermined the dignity of the trial process or created prejudice in the minds of the jurors," and the defendant will not be entitled to a new trial on that basis. *Holmes*, 355 N.C. at 729, 565 S.E.2d at 163.

Here, the trial court did not abuse its discretion in ordering Defendant restrained with leg shackles. The bailiff requested that Defendant be shackled out of concern about Defendant's "wanting to run[.]" Defendant's counsel objected but also conceded "I understand the security concerns . . .[,]" and the trial court addressed out of the presence of the jury but in the presence of Defendant the reason for the restraint. The trial court ensured that the leg shackles could not be seen by the jury, directing the bailiff to different areas of the court-room to test what could be seen from different vantage points. Moreover, defense counsel requested, and the trial court agreed, that Defendant would not have to stand or walk in the shackles in front of the jury. And while the trial court did not instruct the jury to disregard the shackles, there is no showing that the jurors were affected by, or even aware of, the restraint. Any error in not instructing the jury about the restraint was therefore harmless. *State v. Simpson*, 153 N.C. App. 807, 809, 571 S.E.2d 274, 276 (2002).

**[4]** Defendant next contends that the trial court erred in failing to dismiss the murder indictment where it unconstitutionally failed to allege all of the elements of first-degree murder. Defendant, however, recognizes that this argument has been rejected. *See, e.g., State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). This argument is without merit.

**[5]** Defendant next contends that, regarding the two counts of robbery with a dangerous weapon, the trial court erred in finding an aggravating factor and sentencing him within the aggravated range in violation of his Sixth Amendment right to a jury trial. *See Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004).

Recently, our Supreme Court recognized that under the *Blakely* holding, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *State v. Allen*, 359 N.C. 425, 437, 615 S.E.2d 256, 265 (2005); *see State v. Speight*, 359 N.C. 602, 606, 614 S.E.2d 262, 264 (2005). The Court therefore held that "those portions of N.C.G.S. § 15A-1340.16

(a), (b), and (c) which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence violate the Sixth Amendment to the United States Constitution." *Allen*, 359 N.C. at 438-39, 615 S.E.2d at 265. Accordingly, our Supreme Court concluded that "*Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se.*" *Id.* at 444, 615 S.E.2d at 269.

In this case, the trial court found the following aggravating factor: "The defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy." The facts for this aggravating factor were neither presented to a jury nor proved beyond a reasonable doubt. Nor did Defendant stipulate to this aggravating factor. *Allen*, 359 N.C. at 439, 615 S.E.2d at 265 ("[U]nder *Blakely* the judge may still sentence a defendant in the aggravated range based upon the defendant's admission to *an aggravating factor* enumerated in N.C.G.S. § 15A-1340.16(d)." (emphasis added)). Following our Supreme Court holdings in *Allen* and *Speight*, we must remand this matter for resentencing since the aggravating factor was neither a prior conviction nor admitted by Defendant.

**[6]** In his final assignment of error, Defendant contends that the trial court committed reversible error in imposing sentences for the first-degree kidnaping and attempted robbery with a dangerous weapon offenses, both of which the jury was instructed could serve as underlying felonies to the felony murder. "In accordance with the state and federal prohibitions against double jeopardy, our Supreme Court firmly established that 'a defendant may not be punished both for felony murder and for the underlying, 'predicate' felony, even in a single prosecution.'" *State v. Coleman*, 161 N.C. App. 224, 234, 587 S.E.2d 889, 896-97 (2003) (quoting *State v. Gardner*, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986)). The State concedes that the trial court erred in sentencing Defendant on the two underlying felonies.

However, where a court cannot determine the predicate felon(ies) connected to a felony murder conviction, this Court has not granted a new trial, but has remanded the case to the trial court to arrest judgment on at least one of the felony convictions. *See State v. Dudley*, 151 N.C. App. 711, 716, 566 S.E.2d 843, 847 (2002); *see also State v. Freeland*, 316 N.C. 13, 24, 340 S.E.2d 35, 41 (1986) (North Carolina Supreme Court remanding case to trial court where defendant was sentenced separately for first degree rape, first degree sex-

ual offense, and first degree kidnapping, and instructing trial court to "arrest judgment on the first degree kidnapping conviction and resentence defendant for second degree kidnapping" or "arrest judgment on one of the sexual assault convictions"); *Coleman,* 161 N.C. App. at 236, 587 S.E.2d at 897 (finding no error in trial court's discretionary arresting of judgment on defendant's armed robbery conviction and in sentencing defendant for remaining three armed robbery convictions).

We recognize that there is precedence in our State indicating that since the Court cannot determine the underlying felony supporting Defendant's felony murder verdict, judgment on both felonies should be arrested. *See, e.g., State v. Barlowe,* 337 N.C. 371, 446 S.E.2d 352 (1994); *State v. Pakulski,* 326 N.C. 434, 390 S.E.2d 129 (1990); *State v. Murvin,* 304 N.C. 523, 284 S.E.2d 289 (1981). Our research has not revealed authority in which our Supreme Court has spoken directly to the issue of whether there is a statutory or constitutional violation in sustaining a felony murder guilty verdict that does not require jury unanimity on the predicate felon(ies). *See State v. Pakulski,* 319 N.C. 562, 574, 356 S.E.2d 319, 326-27 (1987) (specifically reserving unanimity issue where it was not necessary to resolve the appeal). Nonetheless, in at least one case, our Supreme Court suggested that it would not sanction such a result:

> This Court has held that when a defendant has been convicted of murder in the first degree based upon a finding that the murder was committed in the perpetration of a felony, separate punishment may not be imposed for the underlying felony. *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972). However, separate punishment may be imposed for any offense which arose out of the same transaction <u>but was not the underlying felony for the felony murder conviction</u>. *State v. Murvin,* 304 N.C. 523, 284 S.E. 2d 289 (1981).

> In the case *sub judice,* the trial court's instructions reveal that the only felony upon which defendant's first degree murder conviction could be based was the felonious burning or attempting to burn IBM Building 201. Thus, the first degree murder conviction under the felony murder rule was premised on the underlying felony of burning or attempting to burn Building 201. . . . The trial court properly arrested judgment on that charge. The felonious entry convictions and the two other felonious burning convictions, <u>because they were not submitted as possible underlying felonies, were neither essential nor indispensable elements of the</u>

<u>State's proof of murder and were not underlying felonies for the felony murder conviction.</u> *State v. Murvin*, 304 N.C. 523, 284 S.E. 2d 289. Therefore, imposition of punishment for these convictions was proper.

*State v. Avery*, 315 N.C. 1, 38, 337 S.E.2d 786, 807 (1985) (emphasis added).

Thus, it is reasonable to conclude that the import of our Supreme Court authorities is that judgment may not be entered on any felony that supports the felony murder verdict under the facts of this case. Indeed, in this case, it would appear that where we cannot know whether, or how many of, the jurors believed the attempted armed robbery and/or first degree kidnaping offenses were causally connected to the killing, judgment should not be entered on either predicate felony because either of them may help support the felony murder conviction. In that light, it could be concluded that only the jury can determine whether there exists a transactional connection between the alleged predicate felon(ies) and the killing such that a guilty verdict on felony murder should be returned.

But we are constrained from reaching that result in this case because our Supreme Court has unequivocally held: "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989); *see also State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125 (2004) (stating that while a panel of the Court of Appeals "may disagree with, or even find error in, an opinion by a prior panel . . . the panel is bound by that prior decision until it is overturned by a higher court."). Accordingly, we are bound by this Court's decisions in *Dudley* and *Coleman*. We thus remand this matter to the trial court to arrest judgment on the first-degree kidnaping or the attempted robbery offenses as the underlying felony with respect to Defendant's felony murder conviction in such a manner that would not subject Defendant to a greater punishment.

In sum, we remand for resentencing on the two counts of robbery with a dangerous weapon; and remand to arrest judgment on the first-degree kidnaping or the attempted robbery with a dangerous weapon offenses.

No error in part; remanded in part for resentencing.

Judges CALABRIA and LEVINSON concur.