IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-713

No. COA22-70

Filed 1 November 2022

Pender County, Nos. 19CRS051667, 19CRS051668

STATE OF NORTH CAROLINA

v.

JONATHAN OMAR KELLY

Appeal by Defendant from judgment entered 28 January 2021 by Judge R. Kent Harrell in Pender County Superior Court. Heard in the Court of Appeals 24 August 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Daniel K. Covas, for the State.*

*William D. Spence for Defendant-Appellant.*

COLLINS, Judge.

Defendant Jonathan Omar Kelly appeals from judgment entered upon a jury's verdict of guilty of two counts of robbery with a dangerous weapon. Defendant argues that the trial court erred by (1) allowing the investigating detective to identify Defendant as the perpetrator, (2) denying Defendant's motion to dismiss the charges against him, and (3) entering judgment and commitment on two counts of armed robbery. There was no plain error in admitting the officer's testimony and no error

in denying Defendant's motion to dismiss. The trial court did err by entering judgment and commitment on two counts of armed robbery. We arrest the judgment and remand for resentencing.

## I. Factual and Procedural Background

¶ 2 Shortly before 10:00 pm on 14 October 2019, a man wearing a hooded sweatshirt, dark-colored athletic pants, and gray high-top shoes entered the Phoenix Travel Mart in Rocky Point, North Carolina. Surveillance video showed the man approach two cashiers working at adjacent cash registers, brandish a firearm, and demand money from each cashier. As the suspect reached over the counter to collect the cash, his hooded sweatshirt was raised, revealing purple boxer shorts. The suspect then exited the store and ran towards the interstate. The Phoenix Travel Mart accounting records indicated a cash shortage of $1,355.34 for that day.

¶ 3 Lieutenant James Cotton was alerted to the robbery and responded to the Phoenix Travel Mart, where he reviewed the surveillance video and interviewed witnesses. Cotton completed his investigation and left the Phoenix Travel Mart for the sheriff's office around midnight. Approximately five miles north of the Phoenix Travel Mart, Cotton observed Defendant walking north, and another individual walking south along the road. Defendant was wearing black pants with a white stripe, gray sneakers, and no shirt. Believing that Defendant fit the description of the suspect in the Phoenix Travel Mart robbery, Cotton activated his blue lights and

pulled over, at which point Defendant and the other individual began walking away from each other. Cotton asked to speak with Defendant, informed Defendant that he fit the description of the suspect, and detained Defendant. Cotton then called Detective Mark Lobel, the lead detective on duty that night, to come question Defendant.

¶ 4 Lobel, who had also reviewed the surveillance footage and interviewed witnesses at the Phoenix Travel Mart, met Cotton and Defendant on the side of the road, questioned Defendant, and placed Defendant under arrest. The officers transported Defendant to the sheriff's office shortly before 3:00 am, where Defendant was placed in an interview room under video surveillance while officers processed his information and collected his clothes as evidence. A subsequent search of Defendant's clothes yielded $736 in cash.

¶ 5 Defendant was tried before a jury on 25 January 2021, where the State introduced the surveillance video depicting the robbery from the Phoenix Travel Mart as well as the surveillance video depicting Defendant in the interview room at the sheriff's office. The State also called Cotton and Lobel to testify about their investigation and interactions with Defendant. Lobel testified that, after reviewing the surveillance video of the robbery, he knew he was "looking for somebody with dark-colored black or blue Adidas, three stripes with the Adidas symbol on the top, gray high-top sneakers and a pair of purple underwear[.]" When asked, whether he

believed that Defendant fit the description of the suspect in the Phoenix Travel Mart robbery, Lobel responded, without objection, "Yes, absolutely." Lobel also testified, over Defendant's objection, that, in his opinion, "[D]efendant is the person that robbed the Phoenix Travel Mart."

¶ 6 After viewing and hearing all the evidence, the jury returned guilty verdicts on two counts of armed robbery, one for each cashier at the Phoenix Travel Mart. The trial court consolidated judgment and sentenced Defendant in the presumptive range to 72-99 months' imprisonment. Defendant timely appealed.

## II. Discussion

### A. Detective Lobel's Testimony

¶ 7 Defendant first argues that the trial court erred by allowing Lobel to identify Defendant as the person who robbed the Phoenix Travel Mart.

#### 1. *Preservation and Standard of Review*

¶ 8 We first address whether Defendant preserved this issue for appellate review. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]" N.C. R. App. P. 10(a)(1). "In case of a specific question, objection should be made as soon as the question is asked and before the witness has time to answer." *State v. Battle*, 267 N.C. 513, 520, 148 S.E.2d 599, 604 (1966) (citations and quotations omitted). Where the objectionable testimony takes the form of an unresponsive answer, the objection should be made

through a motion to strike the unresponsive answer. *Id.* "Failure to move to strike the unresponsive part of an answer, even though the answer is objected to, results in a waiver of the objection." *State v. Chatman*, 308 N.C. 169, 178, 301 S.E.2d 71, 77 (1983) (emphasis omitted).

¶ 9 At trial, the following exchange took place during the State's direct examination of Lobel:

> [STATE]: Detective Lobel, that night did you believe that [Defendant] fit the description of the person, the suspect in the Phoenix Travel Mart robbery?
>
> [LOBEL]: Yes, absolutely.
>
> [STATE]: And based upon your opinion, why do you believe that he fit the description?
>
> [DEFENDANT]: Objection, your Honor, as to his opinion.
>
> THE COURT: Ask that question again, [State].
>
> [STATE]: Do you believe – do you have an opinion as to whether or not [Defendant] fit the description of the suspect in the Phoenix Travel Mart robbery that night?
>
> [DEFENDANT]: Objection, your Honor.
>
> THE COURT: Overruled.
>
> [STATE]: Do you have an opinion?
>
> [LOBEL]: Yes.
>
> [STATE]: And what is your opinion?
>
> [LOBEL]: That is the – the defendant is the person who robbed the Phoenix Travel Mart.
>
> [STATE]: And why do you believe that?
>
> [LOBEL]: Because if I take the full totalism of the facts of what I saw on the video which were – was the height and

stature of the defendant, as seen by the video, the type of
pants, which were the Adidas with three lines with the
Adidas mark up towards the top, gray colored high-tops
with some kind of design on the side of it, and then the pair
of purple boxer shorts that were seen underneath the pants
during the commission of the crime, the only thing that the
defendant, when I had interaction with him, that he did not
have on at that point was the gray – was the dark-colored
hoodie which you guys had seen in the video cinched up
along his face, and of course he didn't have the firearm in
his hand or the glove on his hand at the time.

¶ 10　　　　Lobel's answer that "the defendant is the person who robbed the Phoenix
Travel Mart," was not responsive to the State's question "whether or not [Defendant]
fit the description of the suspect in the Phoenix Travel Mart robbery."　Although
Defendant objected to the State's question, he did not move to strike Lobel's
unresponsive answer identifying Defendant as the perpetrator.[1]　Accordingly,
Defendant's objection is waived, and Defendant has failed to preserve this issue for
appellate review.　However, as Defendant has specifically and distinctly alleged the
error amounts to plain error, we will review the issue for plain error.　*See* N.C. R.
App. P. 10(a)(4).

¶ 11　　　　"For error to constitute plain error, a defendant must demonstrate that a
fundamental error occurred at trial."　*State v. Lawrence*, 365 N.C. 506, 518, 723

---

[1] Defendant does not appeal the admissibility of Lobel's opinion that Defendant
matched the description of the suspect.　Instead, Defendant focuses specifically on Lobel's
positive identification of Defendant as the perpetrator.

S.E.2d 326, 334 (2012) (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (citations and quotations omitted).

### 2. Analysis

¶ 12      Even assuming *arguendo* that admitting Lobel's identification testimony was error, it was not plain error considering the other evidence before the jury identifying Defendant as the perpetrator. Lobel testified that, after reviewing surveillance video of the robbery, he knew he was "looking for somebody with dark-colored black or blue Adidas, three stripes with the Adidas symbol on the top, gray high-top sneakers and a pair of purple underwear." Defendant was found approximately three hours after the robbery, approximately five miles north of the Phoenix Travel Mart, wearing "black Adidas sweatpants with the three stripes down the side, the Adidas symbol up towards the upper part of the groin area, and then a gray pair of high-top sneakers with some kind of design on the side . . . [and] purple boxer shorts." When asked, whether he believed that Defendant fit the description of the suspect in the Phoenix Travel Mart robbery, Lobel responded, without objection, "Yes, absolutely."

¶ 13      Cotton, the officer who initially stopped defendant, testified that he stopped to speak with Defendant "[b]ecause he fit the general description, as far as the pants

and the shoes and everything, of the suspect that was involved in the armed robbery." Cotton also testified that, just before stopping Defendant, he observed Defendant speaking with another individual. When Cotton activated his blue lights, Defendant and the other individual separated and started walking away from each other. Defendant was later found to have cash in approximately half the amount stolen from the Phoenix Travel Mart.

¶ 14        Additionally, the jury saw photographs and video of the suspect during the robbery, as well as video of Defendant in the interview room only hours later, allowing it to compare the suspect's appearance and clothing with Defendant's appearance and clothing on the night of the robbery. Considering this evidence, we cannot say that the jury probably would have reached a different verdict had they not heard Lobel's objectionable testimony. Accordingly, admitting Lobel's identification did not rise to the level of plain error.

## B. Defendant's Motion to Dismiss

¶ 15        Defendant next argues that the trial court erred by denying his motion to dismiss the charges against him at the close of the evidence. We review the denial of a motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant

is the perpetrator. Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion. In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. In other words, if the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Blagg*, 377 N.C. 482, 487-88, 2021-NCSC-66, ¶10 (quoting *State v. Golder*, 374 N.C. 238, 249-50, 839 S.E.2d 782, 790 (2020)). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

¶ 16        The State presented the following evidence tending to show that Defendant was the perpetrator:

¶ 17        Lobel testified that, after reviewing surveillance video of the robbery, he knew he was "looking for somebody with dark-colored black or blue Adidas, three stripes with the Adidas symbol on the top, gray high-top sneakers and a pair of purple

underwear." Defendant was found approximately three hours after the robbery, approximately five miles north of the Phoenix Travel Mart, wearing "black Adidas sweatpants with the three stripes down the side, the Adidas symbol up towards the upper part of the groin area, and then a gray pair of high-top sneakers with some kind of design on the side . . . [and] purple boxer shorts." When asked whether he believed that Defendant fit the description of the suspect in the Phoenix Travel Mart robbery, Lobel responded, "Yes, absolutely."

¶ 18 Additionally, Cotton testified that he stopped Defendant "[b]ecause [Defendant] fit the general description, as far as the pants and the shoes and everything, of the suspect that was involved in the armed robbery." Cotton also testified that, just before stopping Defendant, he observed Defendant speaking with another individual. When Cotton activated his blue lights, Defendant and the other individual separated and started walking away from each other. Defendant was later found to have cash in approximately half the amount stolen from the Phoenix Travel Mart.

¶ 19 Furthermore, the jury saw photographs and video of the suspect during the robbery, as well as video of Defendant in the interview room only hours later, allowing it to compare the suspect's appearance and clothing with Defendant's appearance and clothing on the night of the robbery.

¶ 20 Viewed in the light most favorable to the State, this evidence is sufficient to

persuade a rational juror to accept the conclusion that Defendant was the perpetrator.

¶ 21　　Defendant argues that the State's evidence raises only a suspicion or conjecture that he was the perpetrator because "[t]here is absolutely nothing unique or distinctive about any of the items of [D]efendant's clothing[, and] these items of clothing are worn by hundreds and thousands of people." However, it is not the individual items of clothing, but the specific combination of clothing in conjunction with the other evidence presented that constitutes substantial evidence that Defendant was the perpetrator in this case.

¶ 22　　For further support of his argument that the State's evidence raises only a suspicion or conjecture that he was the perpetrator, Defendant cites *State v. Stallings*, 77 N.C. App. 189, 334 S.E.2d 485 (1985); *State v. Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967); *State v. Jones*, 280 N.C. 60, 184 S.E.2d 862 (1971); and *State v. Heaton*, 39 N.C. App. 233, 249 S.E.2d 856 (1978). The cases cited by Defendant are distinguishable from the present case because in each of those cases, the State lacked critical evidence tying the defendant to the crime. Here, the State presented substantial evidence linking Defendant to the crime. Accordingly, the trial court properly denied Defendant's motion to dismiss the charges against him. *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 ("Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to

decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." (citation omitted)).

## C. Sentencing

¶ 23    Defendant next argues that the trial court erred by entering judgment and commitment upon two counts of armed robbery when only a single armed robbery occurred.

### 1. *Preservation and Standard of Review*

¶ 24    We note that by failing to object to the convictions or sentence on double jeopardy grounds, "[D]efendant has waived his right to raise this issue on appeal." *State v. Coleman*, 161 N.C. App. 224, 234, 587 S.E.2d 889, 896 (2003) (citation omitted).  Nonetheless, we invoke Rule 2 of the North Carolina Rules of Appellate Procedure to consider the merits of Defendant's argument.  *See id.* (applying N.C. R. App. P. R. 2 to review a double jeopardy issue on appeal).

### 2. *Analysis*

¶ 25    The essential elements of armed robbery are "(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of 'firearms or other dangerous weapon, implement or means'; and (3) danger or threat to the life of the victim." *State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978); *see* N.C. Gen. Stat. § 14-87 (2019).  "[W]hen the lives of all employees in a store are threatened and endangered by the use or threatened use of a firearm

incident to the theft of their employer's money or property, a single robbery with firearms is committed." *State v. Potter*, 285 N.C. 238, 253, 204 S.E.2d 649, 659 (1974).

¶ 26        In *Potter*, defendant used a firearm to rob a food market, taking a total of $265 from two cash registers operated by two different employees. *Id.* at 241, 204 S.E.2d at 652. Defendant was indicted separately on two counts of armed robbery, one for each employee. *Id.* at 238-39, 204 S.E.2d at 650. He was convicted on both counts and sentenced to two consecutive prison terms. *Id.* at 246, 204 S.E.2d at 655. Our Supreme Court held that the two verdicts had "the same effect as if defendant had been found guilty after trial on a single indictment which charged the armed robbery" of the two employees. *Id.* at 252, 204 S.E.2d at 658. The Supreme Court modified the judgment and remanded the cause with instructions to enter commitment for a single armed robbery, and to adjust the sentence accordingly. *Id.* at 254, 204 S.E.2d at 659.

¶ 27        Here, as in *Potter*, Defendant took a single employer's property from two of its employees. Also, as in *Potter*, Defendant was charged with, and convicted of, two counts of armed robbery, one for each employee. Following *Potter*, the trial court should have entered judgment and commitment upon only one count of armed robbery. Although Defendant's convictions were consolidated into one judgment, and Defendant was sentenced within the presumptive range, "the separate convictions may still give rise to adverse collateral consequences." *State v. Etheridge*, 319 N.C.

34, 50, 352 S.E.2d 673, 683 (1987). Furthermore, "we cannot assume that the trial court's consideration of [the second count] had no effect on the sentence imposed." *State v. Mulder*, 233 N.C. App. 82, 95 n. 5, 755 S.E.2d 98, 106 n. 5 (2014) (arresting judgment and remanding for resentencing even though the original sentence was within the presumptive range for the surviving conviction). Accordingly, we remand this issue to the trial court for resentencing, with an instruction to arrest judgment on one of the convictions.

### III. Conclusion

For the reasons set forth above, the trial court did not plainly err by admitting Lobel's identification. Nor did the trial court err by denying Defendant's motion to dismiss at the close of the evidence. The trial court erred, however, by issuing a judgment and commitment upon two counts of armed robbery. The matter is remanded to the trial court for resentencing, with an instruction to arrest judgment on one of the convictions.

NO PLAIN ERROR AND NO ERROR AT TRIAL; REMANDED WITH INSTRUCTIONS FOR RESENTENCING.

Judges HAMPSON and JACKSON concur.