IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-101

No. 683A05-3

Filed 19 August 2022

STATE OF NORTH CAROLINA

v.

JAAMALL DENARIS OGLESBY

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 278 N.C. App. 564, 2021-NCCOA-354, affirming an order entered on 4 September 2019 by Judge William A. Wood in Superior Court, Forsyth County. Heard in the Supreme Court on 23 May 2022 in session in the Old Burke County Courthouse in the City of Morganton pursuant to N.C.G.S. § 7A-10(a).

*Joshua H. Stein, Attorney General, by Robert C. Ennis, Assistant Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Jillian C. Katz, Assistant Appellate Defender, for defendant-appellant.*

EARLS, Justice.

¶ 1    Defendant Jaamall Denaris Oglesby's motion for appropriate relief (MAR) seeking resentencing under *Miller v. Alabama*, 567 U.S. 460 (2012) explicitly requested that he be sentenced to one consolidated sentence of life with parole or to have his sentences for first-degree murder, first-degree kidnapping, and two counts of robbery with a dangerous weapon all run concurrently. The trial court allowed the

motion, and the matter was set for a resentencing hearing. At the resentencing hearing, Oglesby's counsel—despite the clear language of the original motion which listed each of the relevant file numbers—without explanation told the resentencing court that two of the sentences were not before the Court and only requested that two of the four sentences be run concurrently.

¶ 2      After hearing evidence from the defense regarding Oglesby's age and intellectual capacity, his diagnosed but untreated bipolar disorder at the time of the crime, his self-improvement activities in prison, and the fact that before confessing he was subjected to a twenty-six hour interrogation by police without a parent or guardian present, the resentencing court resentenced defendant on the first-degree murder conviction to life with the possibility of parole after 25 years but concluded in its discretion that "based upon the information presented at the resentencing hearing" it would run his first-degree kidnapping sentence consecutively with the murder sentence. The resentencing court "specifically [found] that consecutive sentences are warranted by the facts presented at the resentencing hearing." On appeal, a majority of the Court of Appeals rejected Oglesby's claim that he received ineffective assistance of counsel (IAC) at the resentencing hearing, concluding that Oglesby's counsel did not render deficient performance and that, regardless, Oglesby could not have been prejudiced by counsel's failure to request that all his sentences be run concurrently. *State v. Oglesby*, 278 N.C. App. 564, 2021-NCCOA-354, ¶ 52.

¶ 3        We agree with the majority below that, under the circumstances of this case, Oglesby cannot show prejudice because "the [resentencing] court heard thorough arguments from both parties regarding a range of mitigating and aggravating circumstances surrounding the serious nature of Defendant's offenses . . . [and] chose not to consolidate the two sentences that were before it . . . instead exercising its discretion to keep these sentences consecutive." *Id.* ¶¶ 51–52. Oglesby has not advanced any basis to support his assertion that, notwithstanding the resentencing court's choice to run his first-degree murder sentence consecutively with his first-degree kidnapping sentence, there is a reasonable probability that the court would have chosen to run his first-degree murder sentence consecutively with either or both of his robbery sentences.

¶ 4        However, the majority below erred when it characterized Oglesby's argument that the resentencing court possessed the authority to run all of his sentences concurrently as "speculative and untested." *Id.* ¶ 49. Rather, under N.C.G.S. § 15A-1354(a), the resentencing court possessed the authority to run any and all of Oglesby's sentences imposed at the same time either concurrently or consecutively. Accordingly, we reject the reasoning of the decision below to the extent that it incorrectly suggested that the resentencing court lacked authority to run Oglesby's first-degree murder sentence concurrently with his robbery with a dangerous weapon sentences; otherwise, we affirm.

## I.  Background

On 7 and 8 September 2002, Oglesby and a group of accomplices entered two separate convenience stores and robbed each store's cashier at gunpoint. Two days later, Oglesby and three other individuals abducted a man named Scott Jester from a restaurant in Winston-Salem. After pulling over on the side of I-40, Oglesby "made Jester get out of the car, Jester pled for his life and told [Oglesby] he had a young child, and [Oglesby] shot Jester three times in the back of the head." *State v. Oglesby*, 174 N.C. App. 658, 660 (2005), *aff'd in part, vacated in part*, 361 N.C. 550 (2007). Oglesby, who was sixteen years old at the time, was later arrested and confessed his involvement in both sets of crimes during an interrogation that lasted for twenty-six hours without a parent or guardian present. *Id.*

Oglesby pleaded guilty to two counts of robbery with a dangerous weapon in relation to the convenience store incidents. After a trial, he was convicted of first-degree murder, first-degree kidnapping, and attempted robbery with a dangerous weapon in connection with Jester's killing. On 28 May 2004, Oglesby was sentenced to the following active terms of imprisonment:

| File Number | Offense | Sentence |
| --- | --- | --- |
| 02 CRS 60325 (51) | Robbery with a dangerous weapon | 95 to 123 months |
| 02 CRS 60325 (52) | Robbery with a dangerous weapon | 95 to 123 months |
| 02 CRS 60369 (52) | First-degree murder | Life without parole (mandatory) |
| 02 CRS 60369 (51) | First-degree kidnapping | 29 to 44 months |
| 02 CRS 60369 (53) | Attempted robbery with a dangerous weapon | 77 to 102 months. |

The trial court ordered all of Oglesby's sentences to be run consecutively. On direct appeal, the Court of Appeals ordered the trial court to arrest judgment on either Oglesby's conviction for attempted robbery with a dangerous weapon or his conviction for first-degree kidnapping to avoid a double jeopardy violation, *State v. Oglesby*, 174 N.C. App. 658, 665 (2005), and we did not disturb that order, *see* 361 N.C. 550, 556 (2007). The trial court ultimately arrested judgment on his attempted robbery with a dangerous weapon conviction.

¶ 7     On 4 April 2013, Oglesby filed an MAR seeking resentencing in light of the United State Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held mandatory life without parole sentences for juvenile offenders unconstitutional under the Eighth Amendment. After the United States Supreme Court held that *Miller*'s substantive Eighth Amendment rule was retroactively applicable in state criminal post-conviction proceedings, *see Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016), Oglesby filed an amended MAR seeking "a resentencing hearing in which his unconstitutional life without parole sentence is converted to a life with parole sentence" and to be "sentenced to one consolidated sentence of life with parole or to have all his sentences in 02-CRS60369 [murder, kidnapping and attempted robbery] and 02-CRS-60325 [two counts of robbery with a dangerous weapon] run concurrently because the original sentencing judge did not

have the guidance of *Miller* and *Montgomery*." On 19 May 2017, Resident Superior Court Judge Richard S. Gottlieb entered an order allowing Oglesby's MAR. The order allowed the MAR without limitation, but in its initial findings referred only to Oglesby's sentences for first-degree murder, attempted robbery with a dangerous weapon, and first-degree kidnapping.

¶ 8        Oglesby's resentencing hearing occurred on 13 April 2021, with Judge William A. Wood presiding. At the hearing, the court informed the parties that the original sentencing judge had already arrested judgment on Oglesby's 77-month minimum sentence for attempted armed robbery. In addition, the State did not contest Oglesby's assertion that he was entitled to be resentenced to life with parole for his murder conviction pursuant to N.C.G.S. § 15A-1340.19B(a)(1), which applies when "the sole basis for conviction of a count or each count of first[-]degree murder was the felony murder rule." The only disputed issue at Oglesby's resentencing hearing was whether his remaining sentences should be run concurrently or consecutively.

¶ 9        In support of his argument that the convictions should be run concurrently, Oglesby's attorney presented mitigating evidence including Oglesby's age at the time of his crimes, that he was the youngest of his co-defendants, that he suffered from untreated bipolar disorder and borderline intellectual impairment when he was arrested, and that he had developed and submitted a proposal for a program to assist at-risk youth while he was incarcerated. In support of its argument that the

convictions should be run consecutively, the State noted the factual underpinnings of Oglesby's convictions and his lengthy disciplinary record while incarcerated, including serious disciplinary incidents near to the time of the resentencing hearing, which the State contended indicated that Oglesby had not been "reformed."

In the middle of the hearing, the court sought clarification from Oglesby's counsel regarding his outstanding sentences and the scope of the court's resentencing authority:

> THE COURT: Just to make sure I understand. . . . First, there are two consecutive armed robbery sentences that the defendant has already served.
>
> DEFENSE COUNSEL: It depends how DOC [the Department of Corrections] actually would calculate that. However, they are not at issue here because they are not related to this particular conduct. They were sentenced at the same time as this was, but it was not part of that trial.
>
> THE COURT: All right. So there are two sentences that he has served or he will have to serve.
>
> DEFENSE COUNSEL: There are. The DOC website shows that he would have been released in February of 2012 in one of them. So it does show that those would be the first sentences that he would be serving. This is from the DOC website and from combined records as to how it was imposed. So the two armed robbery sentences were imposed by DOC prior to the 25 to life.
>
> THE COURT: All right. And then he began a life without parole sentence.
>
> DEFENSE COUNSEL: Yes.
>
> . . . .

> THE COURT: . . . I'm curious, is there any authority under 15A-1340.19B, which I believe is what we are doing here, that permits the Court to modify the order in which the sentence is run, as opposed to modifying the 25 to life?
>
> . . . .
>
> DEFENSE COUNSEL: . . . So the language of *Miller*, we would contend, is that it fully anticipates that felonious conduct leading to the death and that's what's here. And so with that, the appropriate sentence would be a concurrent sentence because it fully encompasses a single act, a single progression of actions, that led to a death. So with that single death and the felonies that led to that, that that would indicate a 25-to-life sentence.

Later in the hearing, Oglesby's counsel reiterated that she was "not referring to the other armed robberies because they are not related, even though they were sentenced at the same time." Ultimately, Oglesby was resentenced to life with the possibility of parole to be run consecutively with his sentence for first-degree kidnapping; in a subsequent written order, the court noted that it "specifically finds that consecutive sentences are warranted by the facts presented at the resentencing hearing and consecutive sentences in this case are not violative of the Eighth Amendment to the United States Constitution."

## II.     The Court of Appeals opinion

¶ 11          On appeal, Oglesby asserted that he received IAC during the resentencing

hearing.[1] A majority of the Court of Appeals rejected Oglesby's claim. According to the majority, Oglesby's claim failed on both prongs of the IAC standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 12        With respect to the first prong of the *Strickland* test, deficient performance, the majority rejected Oglesby's contention that "his counsel acted deficiently by '[telling] the trial court repeatedly that the robbery convictions were unrelated and not before the court' " instead of "rel[ying] on § 15A-1354(a) to persuade the trial court that it was authorized to resentence Defendant on all of his convictions, given that all of his convictions were originally 'imposed . . . at the same time' within the meaning of the statute." *State v. Oglesby*, 2021-NCCOA-354, ¶ 45. According to the majority, the legal argument that N.C.G.S. § 15A-1354(a) granted the resentencing court the authority to run all of Oglesby's convictions concurrently "was, at best, resting on unsettled law, and at worst, meritless." *Id.* ¶ 48. The majority concluded that Oglesby's counsel "did not act deficiently by failing to raise this speculative and untested argument." *Id.* ¶ 49.

---

[1] In addition, Oglesby argued that the trial court abused its discretion in choosing to run his sentences consecutively rather than concurrently, and that it violated the Eighth Amendment to order him to serve sentences collectively requiring him to spend 43 years in prison before becoming parole eligible. The Court of Appeals unanimously rejected the first argument and dismissed his Eighth Amendment claim without prejudice "such that it may be asserted in a subsequent MAR, in anticipation of our Supreme Court's forthcoming decision in [*State v. Kelliher*, 873 S.E. 2d. 366, 2022-NCSC-77]." *State v. Oglesby*, 2021 NCCOA-354, ¶ 55. Neither party sought discretionary review of these aspects of the Court of Appeals' decision; accordingly, neither issue is presently before this Court, and Oglesby remains free to pursue further relief under *Kelliher* in a subsequent MAR.

¶ 13        With respect to the second prong of the *Strickland* test, prejudice, the majority held that Oglesby "cannot show that he was prejudiced by defense counsel's failure to request that the trial court consider the armed robbery convictions for resentencing." *Id*. ¶ 50. According to the majority, "proving prejudice requires a showing of 'a reasonable probability' that 'the result of the proceeding would have been different' if counsel had not erred." *Id*. (quoting *State v. Lane*, 271 N.C. App. 307, 312 (2020)). Applying this standard, the majority concluded that "*even* if defense counsel had requested that the trial court consider the armed robbery sentences under § 15A-1354(a), and *even* if the court was persuaded by this argument, we think it a highly remote possibility that the trial court would have actually chosen to run these sentences concurrently as [Oglesby] now requests.*" Id*. In the majority's view, the resentencing court had already heard "thorough arguments from both parties regarding a range of mitigating and aggravating circumstances" and, "[b]ased on the evidence presented . . . chose not to consolidate the two sentences that were before it (murder and kidnapping), instead exercising its discretion to keep those sentences consecutive." *Id*. ¶¶ 51–52. Thus, "[g]iven that the trial court was apparently unwilling to reduce [Oglesby's] sentence by approximately 29 months via consolidation of the murder and kidnapping sentences, it seems quite unlikely that the trial court would have chosen to reduce his sentence by approximately 190 months via consolidation of the two armed robbery sentences." *Id*. ¶ 52.

Judge Arrowood dissented from the majority's resolution of Oglesby's IAC claim. *Id.* ¶ 57 (Arrowood, J., concurring in part and dissenting in part). According to the dissent, N.C.G.S. § 15A-1345(a) clearly provided the resentencing court with the authority and discretion to run all of Oglesby's sentences concurrently because "[t]he plain meaning of the statute includes defendant, as a person with 'multiple sentences of imprisonment' imposed 'at the same time[.]' " *Id.* ¶ 62. Yet "[a]t the resentencing hearing, defendant's trial counsel repeatedly described defendant's robbery sentences, one of which defendant had served and the other which was either already or nearly complete, as unrelated and not before the trial court." *Id.* ¶ 61. Therefore, the dissent would have concluded that Oglesby's "trial counsel's insistence that the armed robbery convictions were not before the court, when in fact it was in the trial court's discretion to consider them, was unreasonable and constitutes deficient performance." *Id.* ¶ 62. The dissent would also have concluded that Oglesby had shown prejudice because "[i]t is substantially likely, not just conceivable, that the trial court would have exercised its discretion to consider all of defendant's convictions in resentencing had defendant's trial counsel presented the argument." *Id.* ¶ 64.

Oglesby timely filed a notice of appeal in this Court based on Judge Arrowood's dissent.

### III. Oglesby's IAC claim

¶ 16    The Sixth Amendment to the United States Constitution guarantees to all defendants the right to counsel in criminal proceedings. *See, e.g., Strickland*, 466 U.S. at 684 ("[T]his Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial."). The right to counsel necessarily encompasses "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prevail on an IAC claim, a defendant must generally satisfy the two-prong test set forth in *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687; *see also State v. Fair*, 354 N.C. 131, 167 (2001) ("Attorney conduct that falls below an objective standard of reasonableness and prejudices the defense denies the defendant the right to effective assistance of counsel."). With this familiar two-prong test in mind, we turn to Oglesby's IAC claim.

### A. Deficient performance.

¶ 17    To prevail on the first prong of the *Strickland* test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."

*Strickland*, 466 U.S. at 688. There exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. McNeill*, 371 N.C. 198, 218–19 (2018) (cleaned up). At the same time, "this presumption is rebuttable." *State v. Allen*, 378 N.C. 286, 2021-NCSC-88, ¶ 32. "Once a defendant presents evidence rebutting the presumption of reasonableness, the court is not at liberty to invent for counsel a strategic justification which counsel does not offer and which the record does not disclose." *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 526–27 (2003)). Instead, when "further investigation" is required to resolve a defendant's IAC claim—for example, when further factual development is needed because the "cold record" does not disclose information relevant to assessing the reasonableness of counsel's performance—the proper course is generally to dismiss the claim without prejudice to allow for a hearing and further factfinding. *Fair*, 354 N.C. at 166.

¶ 18        In this case, Oglesby contends that his counsel rendered deficient performance at his resentencing hearing by failing to ask the court to consider running all of his sentences concurrently and instead asserting that his two robbery convictions were "not before this [c]ourt." In rejecting this claim, the majority below relied principally on its assessment of the legal merits of the argument Oglesby contends his counsel

improperly failed to present: the argument that N.C.G.S. § 15A-1354(a) provided the

resentencing court with the authority to run Oglesby's first-degree murder and first-

degree kidnapping sentences concurrently with his robbery with a dangerous weapon

sentences. *Oglesby*, 2021-NCCOA-354, ¶ 48. Based on its conclusion that the

argument Oglesby asserted his counsel should have raised was "speculative and

untested" and unsupported by precedent, the majority below held that Oglesby's

counsel did not "act deficiently" at the resentencing hearing. *Id.* ¶ 49.

However, the majority's assessment of N.C.G.S. § 15A-1354(a) is inconsistent

with the plain meaning of the statute. The relevant statutory provision provides in

full:

> (a) Authority of Court.—When multiple sentences of
> imprisonment *are imposed on a person at the same time* or
> *when a term of imprisonment is imposed on a person who
> is already subject to an undischarged term of
> imprisonment*, including a term of imprisonment in
> another jurisdiction, the sentences may run either
> concurrently or consecutively, as determined by the court.
> If not specified or not required by statute to run
> consecutively, sentences shall run concurrently.

N.C.G.S. § 15A-1354(a) (2021) (emphasis added). Here, Oglesby's sentences for first-

degree murder, first-degree kidnapping, and two counts of robbery with a dangerous

weapon—although arising out of two separate criminal transactions and underlying

proceedings—were "imposed . . . at the same time" by the trial court on 28 May 2004.

Accordingly, after converting Oglesby's life without parole sentence to a life with

parole sentence pursuant to North Carolina's *Miller*-fix statute, N.C.G.S. § 15A-1340.19A (2021), the resentencing court possessed the authority to choose to run his life with parole sentence consecutively *or* concurrently with the other sentences "imposed on [him] at the same time" as his original sentence, including his robbery sentences. *Cf. State v. Conner*, 275 N.C. App. 758, 771 (2020)*, rev'd on other grounds*, 2022-NCSC-79 (McGee, C.J., concurring in part and dissenting in part) ("[A]s a statutory matter, the trial court may sentence a defendant for murder under the *Miller*-fix statutes to life with parole and run that punishment consecutively [or concurrently] to another sentence under N.C. Gen. Stat. § 15A-1354(a) so long as doing so does not otherwise conflict with the provisions of the *Miller*-fix statutes.").

¶ 20        Naturally, the Court of Appeals' interpretation of N.C.G.S. § 15A-1354(a) significantly influenced its assessment of the strength of Oglesby's IAC claim: when determining whether an attorney's decision not to raise an argument during a proceeding was "a matter of reasonable trial strategy," *Fair*, 354 N.C. at 167, it matters whether the argument the attorney chose to forego was plausible or fanciful, *see, e.g.*, *State v. Garcell*, 363 N.C. 10, 54 (2009) (concluding that counsel was not deficient for failing to raise a particular legal argument "as [the argument] has no application to this case"). Still, even operating under a correct understanding of the significance of N.C.G.S. § 15A-1354(a), it is not certain at this stage that Oglesby's counsel performed deficiently.

The record does not disclose whether counsel's failure to urge the resentencing court to use its discretion to run Oglesby's murder and kidnapping sentences concurrently with his robbery sentences reflected a conscious strategic choice on counsel's part or counsel's own misapprehension of the relevant law. In theory, counsel could have concluded that further consideration of the facts surrounding the other two offenses would be extremely prejudicial to her client and that a more modest request to simply run the murder and kidnapping sentences concurrently was more likely to be successful. Oglesby now argues that such a factual inquiry is unnecessary because on its face it could not have been a reasonable strategy to take the armed robbery charges off the table, but that is the kind of determination that an appellate court should leave to a factfinder. Ordinarily, the proper course under these circumstances would be to remand for an evidentiary hearing on the question of whether counsel made a strategic choice not to make this argument. *See McNeill*, 360 N.C. at 251–52 ("[W]hen an appellate court determines further development of the facts would be required before application of the *Strickland* test, the Court should dismiss the defendant's [claim] without prejudice."); *cf. State v. Cozart*, 260 N.C. App. 96, 103 (2018) (dismissing a defendant's IAC claim without prejudice because "[t]here is insufficient evidence in the record on appeal to reach the merits of Defendant's IAC claim").

But remand is unnecessary in this case because, for reasons more fully

explained below, the record and the trial court's order are sufficient to assure us that Oglesby could not have been prejudiced by his counsel's failure to raise this particular legal argument at his resentencing hearing. Of course, it is not always possible to resolve a defendant's prejudice claim by looking to a cold record that was itself shaped by counsel's allegedly deficient performance. When "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results," *Strickland*, 466 U.S. at 696, denying a defendant's IAC claim on direct appeal on the grounds that he cannot show prejudice based on a suspect record is inconsistent with the right the Sixth Amendment protects.

¶ 23    Thus, an appellate court's decision to deny or dismiss an IAC claim depends in part on that court's confidence in the record produced during the underlying proceeding. *See State v. Phillips*, 365 N.C. 103, 122 (2011) (concluding that it was appropriate to assess a defendant's IAC claim by applying *Strickland* because "the facts do not make it impractical to determine whether defendant suffered prejudice"). By extension, the nature of the deficient performance an attorney allegedly rendered may be relevant in deciding whether it is appropriate to dispose of an IAC claim on direct appeal on prejudice grounds alone. If a defendant alleges that counsel performed deficiently in a manner that could plausibly undermine the validity of the adversarial proceeding as a mechanism for ascertaining facts—for example, by a

failure to call witnesses who would have contributed to the evidentiary record or by a failure to raise a legal argument that deprived the defendant of an opportunity to introduce supporting evidence—then it may not be feasible to resolve an IAC claim on direct appeal on prejudice grounds alone. *Cf. In re B.B.*, 2022-NCSC-67, ¶ 43 (resolving IAC claim on prejudice grounds in case where "[t]he trial court had the totality of the evidence before [it]").

By contrast, in this case, Oglesby does not allege that his counsel was deficient in a way that would undermine the validity of the resentencing hearing as a means of eliciting the facts and information necessary for the court to exercise its discretion to decide between ordering Oglesby to serve consecutive or concurrent sentences. Oglesby alleges solely that his counsel rendered deficient performance by failing to advance a discrete legal argument that was implicitly rejected by the trial court's specific findings that consecutive sentences were warranted. Accordingly, given the nature of Oglesby's IAC claim here and the logic of the resentencing court's ultimate decision, we need not remand for further factual findings because we can assess whether Oglesby could have been prejudiced by his counsel's failure to make the argument that all four sentences should have run consecutively as requested in his MAR.

**B. Prejudice.**

In order to prevail on an IAC claim, "a defendant must [also] demonstrate that

[counsel's] deficient performance prejudiced the defense, which requires a showing that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *State v. Todd*, 369 N.C. 707, 710–11 (2017) (quoting *Strickland*, 466 U.S. at 687). "To prove prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Allen*, 2021-NCSC-88, ¶ 27 (quoting *Strickland*, 466 U.S. at 694).

Here, Oglesby contends that he was prejudiced by his counsel's assertedly deficient performance at the resentencing hearing because he "may have received a shorter sentence had his counsel presented" the argument that the court could "reconsider how the robbery convictions were run." The problem with this argument is that the resentencing court heard all of Oglesby's mitigating evidence and chose not to run his murder sentence concurrently with his kidnapping sentence. As noted above, when presented with the opportunity to run Oglesby's life with parole sentence concurrently with his kidnapping sentence of 29 to 44 months, the resentencing court expressly concluded that "consecutive sentences are warranted by the facts presented at the resentencing hearing." In essence, Oglesby asks us to speculate that the court, presented with the exact same evidence, would have chosen to run his life with parole sentence concurrently with at least one of his robbery sentences of 95 to 123 months.

We would have to conclude it was a reasonable probability that while choosing not to shorten his sentence by two and a half to three and a half years, the trial court nevertheless would have chosen to shorten his sentence by at least eight to ten years. This counterintuitive assertion is insufficient to demonstrate prejudice.

Furthermore, the sentences that the resentencing court chose not to run concurrently both arose out of the same criminal transaction. The resentencing court chose to reject counsel's argument that running the life with parole and kidnapping sentences concurrently was appropriate because "the kidnapping charge is part of . . . that felony murder," in that the kidnapping formed part of the "felonious conduct leading up to a death." This choice indicates that the resentencing court believed Oglesby should be punished separately for each of his crimes. Oglesby offers no basis for his assertion that there is any "reasonable probability" that the resentencing court would have deviated from its approach had it also been asked to consider his sentences imposed for separate crimes he committed on different days.

Finally, Oglesby echoes the dissenting opinion at the Court of Appeals in arguing that "[i]t is substantially likely, not just conceivable, that the trial court would have exercised its discretion to consider all of defendant's convictions in resentencing had defendant's trial counsel presented the argument." *Oglesby*, 2021-NCCOA-354, ¶ 64 (Arrowood, J., concurring in part and dissenting in part). But the possibility that the court would have *considered* Oglesby's robbery sentences when

exercising its discretion is not enough under the second prong of *Strickland*: while "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case," *Strickland*, 466 U.S. at 693, the possibility that a court may have arrived at the same result by way of a slightly different path does not demonstrate that "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results," *id.* at 696.

## IV.  Conclusion

The Court of Appeals erred in characterizing as "speculative and untested" Oglesby's argument that the resentencing court could have run his murder and kidnapping sentences concurrently with his robbery sentences arising out of a different criminal transaction. *Oglesby*, 2021-NCCOA-354, ¶ 49. In a *Miller* resentencing hearing, the resentencing court possesses the authority and the discretion to run any sentences "imposed . . . at the same time or . . . imposed on a person who is already subject to an undischarged term of imprisonment . . . either concurrently or consecutively, as determined by the court." N.C.G.S. § 15A-1354(a). Nevertheless, the Court of Appeals correctly concluded that Oglesby could not demonstrate prejudice even if his counsel rendered deficient performance by failing to advance this argument at the resentencing hearing. Because the resentencing court was not deprived of any evidence or argument that could have influenced its

decision to run Oglesby's murder and kidnapping sentences consecutively, Oglesby's

IAC claim is properly disposed of on prejudice grounds alone. Accordingly, we modify

and affirm the decision of the Court of Appeals denying Oglesby's IAC claim.

MODIFIED AND AFFIRMED.